RICHARD v. CLARK.

(Supreme Court, Appellate Term.   May 5, 1904.)

1. PLEADING—VARIANCE—DAMAGES.

Where, in an action by one employed to construct a model of defendant's residence, the complaint alleged damages sustained by reason of the delay of defendant's architect in furnishing plans of the building, and evidence was admitted to show not only the delay complained of, but to establish important changes in detailed plans after the work had been properly completed under previous plans, so as to show the performance of extra work, the verdict for plaintiff would not be allowed to stand.

2. CONTRACTS—CONSTRUCTION—TIME LIMIT.

Where a contract under which plaintiff was to construct a model of defendant's residence, according to plans furnished by defendant's architect, provided that, if plaintiff should be delayed in the completion of his work by the delay or default of the owner or architect, the time fixed by the contract for the completion of the work should be extended for a period equivalent to the time lost, the time clause affected plaintiff's liability alone, and absolved him from liability for delay to the extent and in the manner provided thereby, but did not authorize a recovery in damages by him for delay of the architect in furnishing plans.

3. SAME—EXTRA WORK—COMPENSATION.

Where a contract under which plaintiff was to construct a model of defendant's residence provided that the sum of $1,000 was to be the maximum cost to defendant of the work, and was to include the cost of all changes and alterations required by the architect, and there was no allegation or proof that the architect had authority to order alterations which would affect the price fixed in the contract, plaintiff could not recover for extra work performed, necessitated by the act of the architect in submitting new plans after plaintiff had constructed the model according to plans previously furnished.

Appeal from City Court of New York, Trial Term.

Action by Louis Richard against William A. Clark.   From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.   Reversed.

Argued before FREEDMAN, P. J., and LEVENTRITT and GREENBAUM, JJ.

Atwater & Cruikshank, for appellant.
Dunphy & Pearsall, for respondent.

GREENBAUM, J.   The complaint alleges that plaintiff agreed "to provide all the materials and to perform all the work shown in the drawings prepared" by certain named architects "for a quarter-inch scale plaster model of the residence" of the defendant; that by the terms of the agreement it was provided "that plaintiff should complete

the several portions and the whole of the work above described on or before the 15th day of December, 1898, and that he should receive in payment of all his said work and material the sum of one thousand dollars"; that plaintiff "fully completed said work and provided all the materials in accordance with the terms of said contract." Plaintiff further alleges:

"Fourth. That plaintiff did not complete said plaster model of defendant's residence at the time mentioned in said contract, viz., on the 15th day of December, 1898, for the reason that he was unreasonably interrupted, and was unreasonably prevented from so completing it, by the continued and unreasonable neglect and refusal and failure of defendant's said agents and architects to provide and furnish the plaintiff the drawings, plans, or specifications for the said work, and that said continued and unreasonable neglect, refusal, and failure were a disregard and violation of the duty which defendant and his agents owed plaintiff, and hindered, delayed, and obstructed him in his work under said contract."

"Eighth. That for all the work and material furnished by plaintiff under said agreement up to December 15, 1898, and up to the completion and acceptance of said model on or about February 15, 1899, defendant has paid plaintiff only the sum of one thousand dollars, and defendant, his said agents and architects, have, after due and proper request, wrongfully refused and neglected to fix or determine the loss or damage sustained by plaintiff, and to fix and determine the increased cost caused by the continued and unreasonable neglect, failure, and refusal of said agents and architects to furnish the drawings, plans, and specifications, as provided in said contract.

"Ninth. That the unreasonable refusal, failure, or neglect of defendant's said agents and architects to furnish to plaintiff the drawings, plans, and specifications so as to permit him to complete said work and furnish said material within the time specified in said contract, and their unreasonable neglect, failure, and refusal to furnish to plaintiff the complete drawings, plans, and specifications for said work and materials until on or about the 9th day of February, 1899, and their orders and directions given to plaintiff after December 15, 1898, to keep himself and his men in readiness to proceed with the work on said model as soon and as fast as drawings, plans, and specifications for the said work would be furnished by them, and the carrying out of said orders and directions by plaintiff, delayed, interfered with, interrupted, and seriously damaged plaintiff in his work on said model, and necessarily rendered the course of plaintiff's said work much more expensive than contemplated by the parties at the time of the execution of the contract, and necessarily compelled plaintiff to expend and incur the expenditure of sums of money not otherwise necessary to be expended or incurred; to his damages and loss in the sum of one thousand five hundred dollars."

Appropriate allegations as to demand and refusal of architects to furnish certificates are found in the complaint.

The work was prepared and the materials were furnished under a written agreement between the parties, which, among other things, provided as follows:

"Art. 7. Should the contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the owner or the architect, or of any other contractor employed by the owner upon the work, or by any damage which may happen by fire, lightning, earthquake or cyclone, or by the abandonment of the work by the employé through no fault of the contractor, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid; but no such allowance shall be made unless a claim therefor is presented in writing to the architect within twenty-four hours of the occurrence of such delay. The duration of such extension shall be certified to by the architect, but appeal from their decision may be made to arbitration, as provided in article 3 of this contract."

"Art. 9. It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be the net cost of all labor and materials and shall in no case exceed the sum of one thousand and $no/_{100}$ ($1,000 $no/_{100}$) dollars, which sum shall include the cost of all changes and alterations of said work that may be required by the architects, and that such sum shall be paid in current funds by the owner to the contractor in installments, as follows."

The proofs submitted on the trial in plaintiff's behalf tended to establish that the architects delivered 47 separate detailed drawings for the model, 14 of them before December 15th (the contract time for the completion of the work) and 33 after December 15th; that plaintiff frequently demanded the detailed drawings, which, under the contract, it was the duty of the architects to furnish; that he was told by the architects that they were not ready, but would be furnished as quickly as they were prepared; that many of the detailed plans covered parts of the model, which had been already correctly done in accordance with a previous plan, thus rendering useless a large quantity of valuable work, which had been done in strict conformity with the previously delivered plans; that in some instances plaintiff received as many as four or five different plans for the same part of the model, although in each case the work had been satisfactorily done in accordance with each of the previous plans, thus necessitating the doing over again many different parts which had been fully completed. Plaintiff's damages were for the moneys by him expended for labor in connection with the work and the value of his own services from December 15th, the date fixed in the contract for completion, to February 9th, when the model was finally completed and accepted; and it was upon this measure of damages that a recovery of $1,500 was had against defendant.

Sufficient has already been stated to show that, while the complaint is framed for damages sustained upon the theory of a delay occasioned by the defendant's architects in furnishing the detailed plans, the proofs not only show the delay complained of, but, in addition, and in great part, tend to establish many and important changes from time to time in the various detail plans after the work had been properly completed under previous plans, so that, if any recovery would lie on the latter score, it would be on the theory of extra work. Defendant's counsel not only objected to all testimony relating to extra work, but made appropriate motions and took exceptions at the close of plaintiff's case and of the entire case, which entitle him to a review of the errors in that respect claimed. It is unnecessary to do more than to refer to the rule that the recovery must be "secundum allegata et probata," and that the verdict of the jury may not be permitted to stand under proofs which were erroneously admitted as a measure of damages for delay. Nor am I satisfied that any damages in the case are recoverable either for a delay or for extra work. The claim for delay was necessarily based upon the failure of defendant's architects to furnish the detail plans in time, as to which the contract provided that, if the contractor "be delayed in the prosecution or completion of his work by the act, neglect, delay, or default of the owner or the architects," etc., "then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the

causes aforesaid." The contract therefore explicitly contemplated a situation such as has here arisen, and the intention of the parties as evidenced by the agreement evidently was that the time clause affected plaintiff alone, and that he might be absolved therefrom to the extent and in the manner provided in the contract. So, too, with respect to any claim that may be made upon the theory of extra work. The contract in article 9 expressly provides that the sum of $1,000, which it was agreed shall be the maximum cost to the defendant "of all labor and material," was to "include the cost of all changes and alterations of said work that may be required by the architect"; and it is difficult to understand how a recovery may be had for extra work upon the facts presented. There is no allegation nor any proof that the architects had the authority to order alterations which would affect the price fixed in the contract. The architects were the agents "for the purposes of the contract," but not for the purpose of making additional contracts upon which claims for extra work must necessarily rest. If it be argued that the extra work imposed was unreasonable and unfair, then it may be answered that there is no allegation in the complaint which would permit of a finding that the contract did not contemplate the number and kind of alterations in plans that the architects made. For the reasons stated, the judgment must be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.