Peelle, Ch. J.,
delivered the opinion of the court:
The claimant alleges, and the findings show, that through the fault of the officers and agents of the United States it was delayed two years in the execution of its contract for'the construction of the coast-line battle ship Indiana, by reason of which, notwithstanding a corresponding extension of time was allowed, it suffered great damage; hence this action.
A contract was entered into November 18, 1890, by the terms of which the claimant was, for the consideration of $3,063,000, to construct and complete within three years from that date, in accordance with the specifications made a part of the contract, a seagoing coast-line battle ship, designated as No. 1, and subsequently named the Indiana.
On December 4, 1895, and after the vessel had been completed and delivered, the Secretary of the Navy decided that the cause of the delay for the two years in the completion of the vessel was due to the failure of the United States to furnish the materials which by the terms of the contract they had agreed to furnish, in the order required, to properly *188 carry on the work; and. for that reason the claimant was granted a corresponding extension of time for the completion of the vessel.
On May 10, 1894, before the Secretary of the Navy had determined the cause of the delay and before the vessel had been preliminarily accepted, the contract had been modified, as set forth in finding v, by which the United States had agreed that, in consideration of the claimant releasing them “ from all and every claim for loss or damage hitherto sustained by reason of any failure ” on their part or “ on account of any delay hitherto occasioned by ” their action, and giving security against any loss on account thereof, they would pay or advance to it the sum of $234,880, said sum being the amount of the reservations of the first twenty-three installments which, under the terms of the original contract, were not payable until after the preliminary acceptance of the vessel;
On June 20, 1894, the installments as agreed upon had been paid to the claimant, who had executed the required release and given security against loss as aforesaid; but no demand for any refund of the sum so paid, or any part thereof, was ever made upon the claimant, nor was any objection or protest made by it to the release so required as a condition of such payment.
Subsequently, May 10, 1896, and in accordance with the sixth paragraph of the nineteenth clause of the contract, the balance of the money due, but which, pending the decision of the Secretary as to the cause of the delay, had been withheld, was paid to the claimant, who, without protest or objection, executed, as required by said paragraph and clause of the contract, a release as follows:
“The William Cramp & Sons Ship and Engine Building Company, represented by me, Charles H. Cr^mp, president of said corporation; does hereby, for itself and its successors and assigns and its legal representatives, remise, release, and forever discharge the United States of and from all and all manner of debts, dues, sum and sums of money, accounts, reckonings, claims, and demands whatsoever, in law or in equity, for or by reason of, or on account of, the construction of said vessel under the contract aforesaid.”
*189 The vessel, as stated, was to have been completed within three years from the date of the contract, but was not completed or delivered until two years thereafter, or until November 19, 1895. In view of the penalties provided for in case of delay, as set forth in the ninth clause of the contract, it became important to determine the' cause of such delay. That question, as required by the same clause of the contract, was submitted to the Secretary of the Navy, whose decision, as before stated, was that the two years’ delay had been caused by the failure of the Government to furnish the materials in the order required as agreed upon. Iiis decision under that clause of the contract, it was provided, “ shall be conclusive and binding upon the parties.”
The ruling of the Secretary, coupled with the corresponding extension of time for the completion of the vessel, operated to release the claimant from the penalties otherwise provided for by the contract. But while this is conceded by the defendants, they contend that the Secretary had no authority over the question of the liability of the United States for damages for such delay. That is to say, when the Secretary decided that the delay was caused by the fault of the Government, and for that reason granted the claimant a corresponding extension of time, his authority under the contract was exhausted; that while by the terms of the contract all questions arising thereunder concerning deductions from the contract price of the vessel were to be submitted to the Secretary and his decision thereon was to be “ com elusive and binding upon the parties,” still he had no jurisdiction to consider or determine whether the cause of delay so decided by him would form the basis of a liability for damages against the Government for breach of contract.
On the other hand, the claimant contends that as by the terms of the contract the Secretary was given exclusive jurisdiction to determine the-cause of delay, and as he had decided that question in its favor, and thereby released it from the penalties provided for under the contract, the question was res juclioata, and being res judicata, was conclusive on the Government in respect of the cause of delay, whether such delay be made the basis for damages for breach of contract or for the release of penalties thereby imposed.
*190 But whether the decision of the Secretary in respect of the cause of delay be conclusive on the Government in this action for breach of contract we need not now decide, as the findings otherwise show that the delay -was caused by the Government.
The more important question arising on the facts is as to the effect of the' extension of the contract, and in this respect the defendants contend that when the Secretary extended the' contract for the period equal to the delay caused by the Government, and thereby relieved the claimant from any penalties, it was thereby granted the full measure of relief contemplated by the contract.
That contention is based on the ninth clause of the contract, which, after reciting the various penalties to be imposed in case of the claimant’s failure to complete the vessel within the contract time, and of the finality of the decision of the Secretary in respect to the cause of delay, provides:
“All delays which the Secretary of the Navy shall find to be properly attributable to the Navy Department, or to its authorized officers or agents, or any or either of them, and to have been a delay operating upon the final completion of the vessel within the time specified therefor in this contract, shall entitle the party of the first part to a corresponding extension of the period herein prescribed for the completion of the vessel.”
In- support of the contention arising under that provision of the contract the defendants cite the case of Haydnville Mining and Manufacturing Co. v. Art Institute (39 Fed. Rep., 484), which arose in the Circuit Court for the Northern District of Illinois. That was an action to recover a balance claimed to be due for extra work over and above that required by the contract. The contract in that case, among other things provided that the plaintiff would do all the fireproofing work to be done on the .building known as the Art Institute, in the city of Chicago, according to the drawings and specifications; and, further, that should “ delay be caused by other contractors to the positive hindrance of the contractor hereto, a just and proper amount of extra time shall be allowed by the architects, provided it shall have *191 given written notice to said architects at the time of such hindrance or delay.”
From the case it appears that the’ plaintiff was one of several contractors doing different portions of work on the same building, and that if he should be delayed in his work by the other contractors then he should have a “ just and proper amount of extra time ” within which to complete his work.
In construing that provision of the contract the court said:
“ Taking this clause of the contract and the specifications together, I construe them to mean this: That if the plaintiff was delayed by reason of the tardiness or want of dispatch on the part of the contractors doing the other classes of work upon the building, it should .be entitled to such further time for the completion of the work as the architects should allow him; but I do not see that there is any provision that it is entitled to pecuniary damages by reason of said delay. Evidently the parties anticipated that this contractor doing only a part of the work and that which was largely dependent upon the completion of other classes of the work by other contractors, must await the movements of these other contractors; and it seems to me that the stipulation for further time to complete the work in case of delay by other contractors implies that there is to be no pecuniary compensation for such delay.”
The evident purpose of that provision of the contract, it seems to us, was to relieve both parties- from any liability for delays caused by other contractors. That is to say, the plaintiff was not to be held responsible to the defendant for delays caused by other contractors, nor was the defendant to be held responsible to the plaintiff for such delays, both parties being equally blameless. In other words, as betiveen the parties to the contract there was no breach, and hence no right of action accrued to either.
The defendants also cite the case of Richard v. Clark (88 New York Supplement, 242), decided at an appellate term of the Supreme Court of that State in May, 1904. The action arose under a contract to construct a model of the defendant’s residence, alleging that damages had been sustained by reason of the delay of the defendant’s architect to *192 furnish within the proper time the plans of the building. The contract, among other things, provided that—
“ Should the contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay, or default of the owner or the architect, or of any other contractor employed by the owner upon the work, or by any damage which may happen by fire, lightning, earthquake, or cyclone, or by the abandonment of the work by the employee through no fault of the contractor, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid * *
The court, in construing that provision of the contract, said:
“ Nor am I satisfied that any damages in the case are recoverable either for a delay or for extra work. The claim for delay was necessarily based upon the failure of defendant’s architects to furnish the detail plans in time, as to which the contract provided that if the contractor, ‘ be delayed in the prosecution or completion of his work by the act, neglect, delay, or default of the owner or the architects,’ etc., £ then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid.’ The contract, therefore, explicitly contemplated a situation such as has here arisen, and the intention of the parties as evidenced by the agreement evidently ivas that the time clause affected plaintiff alone and that he might be absolved therefrom to the extent and in the manner-provided in the contract.”
In neither of the cases cited did the contract provide for a penalty for delay caused by the contractor; .but in the case of Nelson v. Pichwick Associate Company (30 Appellate Court Ill., 338) the contract did provide for a penalty for delay. The provision respecting additional time for such delfty was identical with that, in the case of the Manufacturing Company v. The Art Institute, supra, and the court held that the granting of additional time for delay caused by other contractors did not preclude the recovery of damages resulting from such delay. The decision was based upon the theory that it was incumbent upon the one who was having the building erected to keep the work in such a state of forwardness as to enable the contractors to complete their respective work within the contract time.
*193 That case differs from the present one in this, that there contracts had been entered into with various contractors to do certain portions of the work on the same building, while in the present case the claimant was the only contractor bound to do work on the vessel, though the Government was to furnish some of the materials therefor.
The claimant could have completed the vessel within the time agreed upon but for the default of the Government; and to hold that the granting of additional time for such default precludes the claimant from the recovery of damages, if. otherwise entitled thereto, would, it seems to us, be reading into the contract a provision not in the minds of the parties when the contract was entered into.
From the language of the ninth clause of the contract it is evident that what was in the minds of the parties was that if, through the fault of the claimant, the vessel was not completed within the contract time, then the penalties by way of deduction from the contract price might be imposed; but if delayed by the fault of the Government, then additional equivalent time should be allowed, not in lieu of compensation for damages for such delay, but to enable the claimant to proceed to complete the vessel. But for that provision in the contract for additional time, the delay caused by the Government (the claimant having performed its part) would have discharged the claimant from further performance and left it with a right of action for damages on the obligation growing out of the breach. Or the claimant might have continued to perform, reserving to itself the right to sue for such damages as it may have sustained. On the other hand, as the claimant by the terms of the contract agreed that additional time should be allowed, equivalent to such delay, it thereby waived its right to terminate the contract for that cause; but the question of waiving- its right to damages growing out of such delay was certainly not in the minds of the parties at the time the contract was entered into.
Nor was the granting of such additional-time intended by the parties to operate as an estoppel against the claimant *194 from seeking redress for damages it may have sustained by reason of the default of the Government. Certainty is an essential element in all estoppels, and the rule should not be applied unless the recitals in the contract are clear and conclusive against the claimant. Courts will not suffer a party to be deprived of a right without his consent, and such consent can not be inferred .from the mere granting of additional time without any fault on the part of the claimant.
The claimant being without fault in the delay, no penalty could have been imposed upon it without gross error akin to fraud, from which relief would have been granted by the courts. The granting of such additional time was clearly for the benefit of the Government, as it thereby prevented the termination of the contract and saved it the expense of reletting the work to other contractors. Any other construction of the contract, it appears to us, might result in irreparable damage to the claimant, for if the Government is not to be held responsible in damages for its delay by reason of a corresponding extension of time, then it may delay the work indefinitely and exonerate itself by the mere granting of additional time in which to enable a contractor to complete his work.
But this objection, the defendants say, should have been considered by the claimant at the time of entering into the contract, and that if not satisfied therewith it could have declined to so contract. This would be true if the contract clearly so recited, or if the language used was susceptible of no other conclusion. We do not think the language used can be construed to exclude claims for damages arising out of such a breach; and if not, then the extension of time would not operate to deprive the claimant of its right to a recovery therefor.
Nor does the doctrine of ecopressio unius est exclusio alterius apjfiy- That doctrine is not of universal application, and is always subject to the intention of the parties, evidenced by the contract.
It was ntit necessary to write into the contract that in case of breach the party injured should be entitled to redress for the damages thereby sustained. That right accrued when *195 the default took place, and it would be no answer to say that because additional time is provided for in the contract therefore no breach occurred, for the extension of time is dependent upon a breach — that is to say, delay cause by the Government in the prosecution of the work.
On this branch of the case, therefore, we reach the conclusion that a corresponding extension of time for the delay caused by the Government was not intended by the parties to. conclude the claimant or deprive it of the right to maintain an action for any damages it may ha've sustained by reason of such delay.
The defendants further contend that the final release set forth in finding vi was intended by the parties as a full and final discharge of the United States from any and all' claims of whatever character growing out of the construction of the vessel under the contract.
That contention is based on the sixth paragraph of' clause 19 of the contract, ivhich reads:
“When all the conditions, covenants, and provisions of this contract shall have been performed and fulfilled by and on the part of the party of the first part, said party of the first part shall be entitled, within ten days after the filing and acceptance of its claim, to receive the said ‘ special reserve,’ or the surplus, if any, of the said ‘ reserve fund,’ or so much of either as it may be entitled to, on the execution of a final release to the United States, in such form as shall be approved by the Secretary of the Navy, of all claims of any kind or description under or by virtue of this contract.”
The release which was sighed by^ the claimant May 18, 1896, under that provision of the'contract is as follows:
“The William Cramp & Sons Ship and Engine Building Company, represented by me, Charles H. Cramp, president of said corporation, does hereby, for itself and its successors and assigns, and its legal representatives, remise, release, and forever discharge the United States of and from all and all manner of debts, dues, sum and sums of money, accounts, reckonings, claims, and demands whatsoever, in law or in equity, for or by reason of, or on account of, the construction of said vessel under the contract aforesaid.”
In support of their contention the defendants cite the case *196 of Coulter v. Board of Education, etc. (68 N. Y., 865). That case arose under a contract to do the carpenter work on a school building in the city of New York. The contract, among other things, provided in substance that the last payment thereunder should not be made until a certificate had been filed by the contractor to-the effect that all claims and demands for extra work or otherwise under or in connection with the contract had been presented to the Board of Education and the amount to be paid therefor agreed upon, and that such last payment was to be in full of every claim or demand whatsoever in the premises, except the amount agreed upon for extra work.
The contractor was delayed in the prosecution of his work by the contractor doing the mason work. After the expiration of the time and during such delay the price of labor and materials advanced so that the cost of completing the carpenter work was materially increased. For this increased cost the contractor brought suit, but in the certificate which he had previously filed he had omitted to include this item.
On the facts stated the court said:
“A material question is, whether the certificate, given by the plaintiff upon receiving the last payment, precludes him from recovering the damages claimed in the complaint. It is quite clear that the certificate alone, regarded as a release or receipt, would not have that effect. It does not in terms release such damages, and the general words employed would, within established principles, be limited to the items specified. (1 Edw. Ch., 34; 1 Cow., 122, and cases there cited.) But the certificate, taken in connection with the contract, presents a different question.- * * * By this provision the parties evidently contemplated that all claims arising out of or in consequence of the contract should be presented and liquidated before the final payment was made. If the plaintiff had declined to give -the certificate, he could not have enforced the payment. By giving the certificate he induced the defendant to make the payment, and is, I think, precluded from afterwards setting up other claims. Under the agreement the certificate amounts to a waiver of other demands. The language of the contract is broad and comprehensive, ‘ that such payment is in full of everjr claim or demand whatever in the premises,’ whether for extra work or otherwise. It must be borne in mind that this language was used in advance, and we must give it effect according to *197 the intent of the parties, and it seems most rational to suppose that when the certificate was given and the last payment made, together with the amount of other claims, which had been liquidated, they designed that the transaction should be closed. Parties have a right to make contracts for themselves, and it is the duty of courts to enforce them as made,- even though a hardship may be worked. Fraud or mistake may entitle a party- to relief, but if neither of these elements exists the contract must be carried out according to its terms. We think the plaintiffs were required to present this claim and make an effort to have it adjusted according to the contract; failing in that, they had the option to bring an action or sign the certificate and waive the claim.”
That case is quite different from the present one. There the contractor was required before receiving the last payment to file a certificate setting forth “ all his claims and demands for extra work or otherwise under or in connection with the contract,” and as he failed to set forth any claim for damages growing out of the increased cost of labor and materials during the period of delay he thereby concluded himself from thereafter asserting such claim.
Here the provision of the contract is that “ when all the conditions, covenants, and provisions of this contract shall have been performed or fulfilled ” by the contractor, then it “ shall be entitled, within ten days after the filing and acceptance of its claim, to receive the £ special reservation,’ or the surplus, if any, of the said £ reserve fund,’ or so much of either as it may be entitled to, on the execution of a final release to the United States, in such form as shall be approved by the Secretary of the Navy, of all claims of any kind or description under or by virtue of this contract.”
The final payment was made dependent upon the performance by the claimant of all the conditions, covenants, and provisions of the contract, and those it had performed, and therefore upon the presentation of its claim therefor it was, under the terms of the contract, entitled to final payment, upon the execution of a release as therein provided.
But while the form of the release was subject to the approval of the Secretary his act is qualified by the words “ of all claims of any kind or description under and by virtue of this contract,” and therefore unless the claim for damages *198 growing out of the delay caused by tbe Government was embraced in the language “ all claims of any kind and desorption under or by virtue of this contract,” then such' claim was not embraced in the release.
Whatever damages the claimant suffered grew out of the breach by .the Government and not by. the claimant • in its performance and fulfillment of ‘the “ conditions, covenants, and provisions ” of the contract. The claim, therefore, having arisen out of such breach was not the subject of release contemplated by the contract, nor ivas it embraced in the final release. The receipt given by plaintiff did not include the release of claims not considered. This question was before the court upon a receipt in almost the exact form arising upon a claim growing out of delays on the part of the Government in supplying material, and the court there held that it was no bar to the suit. (Pneumatic Gun-Carriage Co., 36 C. Cls. R., 71). In our view of the case the question respecting the power and authority of the Secretary of the Navy to settle an unliquidated claim does not arise.
The case of Phelan v. Mayor, etc. (119 N. Y. R., 86, 90), is also cited in support of the defendants’ contention. That case arose under a contract for grading a street. The contract in substance provided that the work should be completed in 320 days, and in case of failure so to do the contractor was to pay the wages of inspectors for the excess of time employed in the work. In computing the time the contract provided in substance that the total timé during which the work of completing the contract is delayed by the defendants — such time to be determined and certified by the commissioner of public works — should be excluded.
The work not having been completed within the contract time, the defendants retained the inspectors’ fees for the extra time. The suit ivas brought to recover the amount-so retained, the contractor claiming that the delay in excess of 320 days was caused by the defendants leaving obstructions in the street. In construing the contract the court, among other things, said: “ There was no determination by the commissioner of public works applied for or made *199 under the provision. The inspectors’ fees were a proper charge under another provision of the contract, unless, according to the provision quoted, the delay was occasioned by the act or omission of the city. But by the terms of this clause it was a condition precedent to any right of the plaintiff, to be relieved from the allowance. of inspectors’ fees, that the matter should have been submitted to and determined by the commissioner of public works, and this was not done. It was a lawful provision, and is an answer to the claim in the first count of the complaint. If the commissioner had neglected or refused to act when called upon to do so, a different question would be presented.”
The analogy between that and the present case is hardly perceptible. There no determination by the commissioner of public works was applied for or made, and as such determination was made a condition precedent, to the contractor’s right to be relieved from the expense of inspector’s fees, no recovery could be had therefor. The logical result of that decision is that if the contractor had applied for said defe?’-mination he would have been allowed to recover.
In the present case the claimant was, when it had performed and fulfilled “ all the conditions, covenants, and provisions ” of the contract, entitled “ within ten days after the filing and acceptance of its claim, to receive ” final payment, upon the execution of a release to the United States “ of all claims of any kind or description under or by virtue of this contract.”
As no damages grew out of the performance of the contract by the claimant, no claim was predicated thereon; and as the contract does not provide for the release of claims for damages arising-out of a breach by the Government, the signing of the final release does not, for the reasons above stated, conclude the claimant from a recovery, if otherwise entitled.
The defendants further contend that by signing the release of May 10, 1894, referred to in finding v, the claimant thereby concluded itself as to all claims for damages for delay caused by the Government prior thereto. On the other hand, the claimant contends that at the time of the execution of said release it had been delayed by the Government in the *200 performance of its contract, thereby preventing it from receiving the payments it would have received but for such delay; and further, that the Secretary of the Navy had no authority or jurisdiction to settle the claim for damages growing out of a breach of contract, and that therefore the release respecting the claim for damages was without consideration.
At the time stated the cause of the delay had not been decided by the Secretary, though the time for the completion of the vessel had expired nearly six months before.
The claimant, in order to receive certain .payments in advance of the preliminary acceptance of the vessel, entered into the modification of the contract, made a part of the petition and referred to in finding v, whereby the contract was modified.
The cost of the vessel was three million and sixty-three thousand dollars ($3,063,000), to be paid in “thirty equal installments, as the work progresses, with the reservation of ten per cent from each payment.”
. The tenth clause of the contract provides for a preliminary trial trip “ to test the hull and fittings, the machinery, including engines, boilers, and appurtenances, the equipment, and the speed of the vessel, and that such vessel shall be accepted only on fulfillment and subject to the conditions and agreements hereinafter set forth.” Then follow the. conditions, among which is the guarantee by the claimant that the speed “ shall be not less than an average of fifteen (15) knots per hour, maintained successfully for four (4) consecutive hours,” etc.
The eleventh clause of the contract provides, in substance, that if upon such trial trip the requirements relating to the hull, machinery, and the fitting and securing of her armor shall be fulfilled and the speed of fifteen knots guaranteed as aforesaid shall be developed and maintained, “ then and in such case the vessel shall be preliminarily accepted and payment of the last three installments of the contract price of the vessel and of all reservations shall be made, subject, however, to a special reserve of sixty thousand dollars ($60,-000) from and out of the reservation hereinafter provided *201 for; but if the speed developed and maintained by said vessel during such trial shall fall below the speed (15 knots) guaranteed as aforesaid she shall be conditionally accepted, subject to deductions, as aforesaid, from the contract price of the vessel on account of her failure to reach the speed (15 knots) guaranteed as aforesaid,” provided the conditions relating to the hull, machinery, and fittings of the armor shall have been fulfilled.
In case of such conditional acceptance it is therein provided that the twenty-eighth, twenty-ninth, and thirtieth installments of the contract and, the reservation of payments under the contract “ shall constitute a reserve fund which shall be applicable to or toward the satisfaction of such deductions from the contract price,” to be retained by the Government for that purpose.
The further provision of that clause is that “ in case of a preliminary acceptance of the vessel the said special reserve of sixty thousand dollars ($60,000), or in case of a conditional acceptance of said vessel, the said reserve fund, or so much thereof as may, in the judgment of the Secretary of the Navy, be necessary, shall be held until the vessel has been finally tried after being fully equipped, armed (or weighted correspondingly), and in all respects complete and ready for sea under conditions prescribed or approved by the Secretary of the Navy: Provided, That such final trial-shall take place within five months from and after the date of the preliminary or conditional acceptance of the vessel.”
Then follow the provisions to the effect that if upon such final trial, or if not then taken place, any time within five months after the preliminary or conditional acceptance, any weakness or defect in the hull, fitting, or equipment, due to defective workmanship or defective materials, or in the placing and securing of the armor, due to defective workmanship, develops, the same shall, at the expense of the claimant, be corrected and repaired to the satisfaction of the Secretary of the Navy.
At the time of the execution of the modification of the contract, and of the release hereinbefore referred to, the vessel had not been sufficiently advanced to put her upon her *202 trial trip to test her hull, machinery, and speed, and the placing of the armor as aforesaid, and therefore the vessel had not been preliminarily accepted.
We have thus referred at length to the provisions of the contract respecting the trial trip of the vessel to test her hull, machinery, speed, and the placing of her armor, coupled with the condition of the vessel respecting the work then done, in order to get more clearly before us the force and intended effect of the modification or amendment of May 10, 1894, in conformity with which the release referred to was executed.
Under the conditions stated, the contract was modified to the effect that in lieu of the payment of the last three installments and of the amount reserved from the previous payments “ only after a trial trip and a preliminary or a conditional acceptance of the vessel,” there should be paid to the claimant so much of the aggregate amount of the last three installments of the contract price and of the amount of the reservations from previous payments as will leave in the hands of the party of the second part an amount sufficient, in the judgment of the Secretary of the Navy, to cover the special reserve of sixty thousand dollars ($60,000) provided for in the eleventh clause of the contract, the cost of all unfinished work and all deductions likely to be made on-account of deficiencies in speed and all contingencies that are liable to arise.
“ But such payment shall nót be made until the party of the first part has given bond with approved security conditioned for the return to the party of the second part of the amount so paid, upon demand being made by the Secretary of the Navy therefor, for indemnity of the party of the second part against loss or injury by reason of such payment, and in consideration of such advance payment the party of the first part hereby releases the party of the second part from all and every claim for loss or damage hitherto sustained by reason of any failure on the part of the party of the second part to comply with its contract or on account of any delay hitherto occasioned by the action of said party of the second part.”
In conformity with the modification, the claimant was paid $234,830, for which it executed the release and gave the *203 required bond. The security exacted was to indemnify the Government against “ loss or injury by reason of such payment.” That is to say, if upon the trial trip the speed of the vessel should fall below 15 knots per hour and for that reason be conditionally accepted, deductions were to be made from the contract price of the vessel as provided in the eleventh clause of the contract; and to that end the sum paid was to be restored to the reserve fund and applied to the satisfaction of such deduction.
As before stated, at the time of the modification of the contract and the payment of the money thereunder the question of responsibility for the delay had not been determined nor was such delay at the time conceded to have been caused by the Government, as no extension of time had then been granted by it, and as the vessel had not been preliminarily accepted nor the work thereon sufficiently advanced to determine whether the materials and workmanship were in conformity with the contract, we think the modified contract and the payment of money thereunder was supported by sufficient consideration, and further, that the modification of the contract as made was within the authority of the Secretary of the Navy.
By virtue of the modification the Government parted with the money it might otherwise have kept until the vessel had been preliminarily accepted, and it is no answer to say that but for the delay caused by the Government up to that time the vessel would have been preliminarily accepted or that the materials and workmanship would have been in all respects in conformity with the contract.
The claimant executed the modified contract and the release thereunder required without protest or objection, and by the execution of the bond indemnifying the Government “ against loss or injury by reason of such payment ” it thereby conceded that the money was not then due, even though the delay up to that time had been caused by the Government.
Again, it is a familiar principle of law that one who accepts the terms of a contract in part must accept the contract as a whole. The claimant accepted the money under the *204 contract before it was in fact due, and in consideration thereof executed the release whereby it released the Government “ from all and every claim for loss or damage hitherto sustained by reason of any failure ” on the part of the Government “ to comply with its contract or on account of any delay hitherto occasioned ” by it.
It is insisted that the court can give no force or effect to that release, though authorized by the modified contract, because the modification itself was without consideration in this that but for the delay caused by the Government the vessel would have been sufficiently advanced toward completion to entitle the claimant to receive the money it did receive; and that in so far as the modified contract seeks to release the Government from loss or damage caused by such 'delay, the Secretary of the Navy was acting outside of his powers.
We have endeavored to show that under the circumstances of this case the modified contract was supported by sufficient consideration and that the claimant, having accepted the contract in part, is bound to accept it as a whole.
At that time no claim for loss or damage resulting from delay caused by the Government had been presented to the Secretary of the Navy, nor was any such claim asserted when the modified contract was entered into, hence the provision of the contract requiring a release “ from all and every claim for loss or damage hitherto sustained” by reason of any delay caused by the Government must be treated as a precautionary measure by the Secretary to prevent the claimant from thereafter asserting such claim. Such provisions are common, especially in the modification of contracts where one party seeks to obtain a benefit thereunder in advance of the time specified therefor in the contract, and it would not do to say that such precautionary measures by executive officers are not within their jurisdiction or that such contracts are in their nature the settlement of unliquidated claims.
Clearly the purpose of that provision of the contract was that in consideration of the money paid the claimant would not thereafter assert any claim from which it had released the Government, and this the claimant was bound to know.
*205 Having accepted a part of the contract, tlie question, therefore, is not whether the Secretary of the Navy had authority to settle such claim, but whether the claimant is not bound to accept the contract as a whole. The recitals therein are clear and particular, and we must hold that the claimant, for the reasons stated, is estopped from now asserting any claim for loss or damage resulting from delay prior to May 10, 1894, though it was subsequently decided by the Secretary of the Navy that the delay for the whole period of two years had been caused by the Government. While we are not free from doubt on this branch of the case because of that decision, still, as the whole matter was within the breast of the claimant and its officers at the time it executed, without protest or objection, the modified contract and release, we are inclined to hold claimant to the contract it entered into and on the faith of which the Government at the time parted with the money.
This brings us to the items of damage caused by the delay. We have found and set out the damage for the two years’ delay and then apportioned it for the period subsequent to May 10, 1894 — that is to say, we have found the actual or compensatory damages resulting immediately from the acts of the Government. As the claimant was permitted to complete the contract, no question of profits or gains prevented is involved.
Respecting the expense growing out of the purchase of additional ground, as set forth in finding vii, it is sufficient to say it is not shown that the purchase of the real estate and the improvements thereon were necessary to the construction of the Indiana, nor that any portion of said outlay was attributable to the vessel. It was incumbent upon the claimant under the contract to provide at its own expense the yard and ground, shops, machinery, tools, and appliances necessary to enable it to perform the contract.
We have, however, in finding vm, found the reasonable .value of the use of the yard, including said real estate, machinery, tools, superintendence, and general upkeep of the yard equitably chargeable to the Indiana during the period of delay, at $3,000 per month, or for the period of delay sub *206 sequent to November 10, 1894, at $54,887.67. Similar items were allowed in tlie case of Myerle (31 C. Cls. R., 105-120), while in the McKay ease (27 C. Cls. R., 422) they were disallowed for the reason, stated in the Myerle ease (page 137), that “ those cases came to this court under special acts containing provisions peculiar to them as to the measure of damáge, whereas this case must be determined by the general rules of law applicable to such cases.” So in the present case the damages must be determined by the general rules of applicable law.
In finding ix we have found the reasonable cost for the care and protection of the vessel during the period of delay, including the cleaning of the bottom, furnishing material and painting (except the last or final coat), electric lighting, keeping up steam to prevent valves from leaking, and every other expense connected therewith for the whole period of delay to be $48,000, and for the period from May 10, 1894, $36,591.78, all of which items of expense we find were reasonable and necessary to the care and protection of the vessel.
Regarding the expense for wharfage set forth in finding x we are not free from doubt, as the claimant was not a wharf-inger, and allowance has been made for the use of the yard, but as the ordinary wharfage at the port of Philadelphia for merchant vessels is found to have been 1 cent per net registered ton during the period of delay, we have, in the absence of any contract, concluded to allow that rate in the present case as reasonable. (Ex parte Easton, 95 U. S. R., 68-73.) The net registered tonnage of the Indiana, we find, was 3,203.58, and at the rate stated would be $32 a. day, or $23,360 for the whole period of delay, and for the period subsequent to May 10, 1894, $17,808, which sum includes the dredging of the basin in which to accommodate the vessel, and also the expense of watchmen — that is to say, wharfage being allowed, the claimant must be regarded as a wharfinger to that extent and therefore chargeable as a bailee for hire with ordinary care. Upon that theory we have made the allowance, in which is included the expense of watchmen.
No allowance is made for the tug service in the removal of the vessel from time to time for the reason that the Gov- *207 eminent, being charged with continuous wharfage during the period of delay, any removal of the vessel that took place during that period must be held to have been for the benefit-of the claimant and not for the benefit of the Government.
Respecting the claim for $34,468.55 for insurance on the vessel during the whole period of delay, or for $26,272.55 for the delay subsequent to May 10, 1894, we find that to have been the reasonable amount paid out by the claimant during that period, and we therefore allow the same.
The last item of damage is $17,514.94, for expense incurred in preparing the vessel for her trial trip. This expense has no connection whatever with the delay caused by the Government in failing to furnish the armor.
In March, 1894, the claimant, assuming that the work on the vessel had reached a stage of completion entitling her to a trial trip, so notified the Secretary of the Navy, and that officer called the claimant’s attention to the tenth clause of the contract, respecting the payment of the expense therefor by the Government in case such trial should be successful, and, without otherwise approving the proposed-trial of the vessel, directed certain naval officers to inquire into such expense and see if the same was reasonable. They verified the same and found no objection to the amount thereof.
The claimant, in proposing the trial trip it did, seems to have acted upon the theory that because other vessels built by it for the United States had been sent on trial trips before their completion, therefore the Indiana, with only eight-tenths of her hull and equipment completed and half of the armor fitted, was also subject to such trial trip.
The tenth clause of the contract provides that “ when the vessel is completed and ready for delivery to the United States, as required by the drawings, plans, and specifications, she shall be subjected to a trial trip, in the open sea, under conditions prescribed or approved by the Secretary of the Navy, to test the work and fittings, machinery, including engines, boilers, and appurtenances, the equipment and the speed of the vessel, and that such vessel shall be accepted only on fulfillment of; and subject to, the conditions and agreements hereinafter set forth.” Then follows the statement of the conditions as to the working of the machinery, *208 the speed developed and maintained, materials and workmanship of the hull, fittings, machinery, etc. And by the •eleventh clause of the contract it is provided that if.the vessel and her equipment and the fitting of her armor shall meet the requirements, and the speed of 15 knots guaranteed shall be developed and maintained, then and in such case the vessel shall be preliminarily accepted. But manifestly the vessel was not then in condition for such trial trip.
It may be that the claimant suffered loss because the Secretary directed the verification of the expenses incident to the preparation of the vessel for trial, but it was bound to know whether under the contract the vessel was in readiness for such trial trip, and therefore .it can not be held that it was misled by the action of the Secretary, even if his act in directing the verification of the expense so incurred should be regarded as giving his tacit assent to such trial.
It is well settled, both by this court and the Supreme Court, that the Government can not be held liable for the promises and acts of its officers and agents unless made and done pursuant to law. Leonard's case (18 C. Cls. R., 382); Allen's case (28 id., 141-146); Whiteside et al. v. United States (93 U. S. R., 247-257), wherein, respecting the rules that should govern in such cases, the court in the last case said:
“ Different rules prevail in respect to the .acts and declarations of public agents from those which ordinarily govern in the case of mere private agents. Principles, in the latter category, are in many cases bound by the acts and declarations of their agents, even where the act or declaration was done or made without any authority, if it appear that the act was done or declaration was made by the agent in the course of his regular employment; but the Government or public authorit}'' is not bound in such a case, unless it manifestly appears that the agent was acting within the scope of his authority, or that he had been held out as having authority to do the act, or was employed in his capacity as a public agent to do the act or make the declaration for the Government. Story’s Agency (6th ed.), sec. 307a; Lee v. Munroe, 7 Cranch, 376.”
But we need not rest the case on that theory, for while the act of the Secretary may in fact have been relied upon as *209 bis assent to such trial trip, still the claimant can found no right thereon for a recovery in the' case, because it was bound to know that under the terms of the contract the offer of the vessel for trial at that time was premature.
The result of our investigation of the whole case is that the claimant is entitled to recover for the loss it sustained by reason of the delay of the Government to furnish the armor for the period subsequent to May 10, 1894, being for one year six months and nine days, as set forth in finding xm, the sum of $135,,560.
BaRNEy, J., had not been appointed when this case was tried, and took no part in the decision.