## Emporium Area Joint School Authority *v.* Anundson Construction and Building Supply Co., Appellant.

374

Argued September 18, 1959. Before GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., and HIRT, J., absent).

.C. Henry Nicholson, for appellant.

Edwin W. Tompkins, with him Tompkins & .Tompkins, for appellee.

OPINION BY WATKINS, J., December 17, 1959:

The chronology of events leading up to this appeal is as follows: On September 4, 1952, on application of the school districts of the Borough of Emporium and Shippen Township, Cameron County, Pennsylvania, the Emporium Area Joint School Authority, the appellee herein, was incorporated under the Municipal Authorities Act of 1945, P. L. 382, as amended, 53 PS §301 et seq. Said corporation was enrolled on September 4, 1952 in the office of the Secretary of the Commonwealth, at Harrisburg, Pennsylvania. On January 9, 1953, the Authority and Anundson Construction and Building Supply Company, appellant herein, entered into a contract for the construction of a new school building in the Borough of Emporium, Pennsylvania. Anundson was the general contractor. At the same time other contracts were entered into between the authority and various contractors covering the heating and ventilation, plumbing and drainage, and electric work for the same school building. The contract price was originally $768,000 but due to changes in the work, authorized by the authority, in accordance with the provisions of the contract, costing $27,142.30, the total contract price was $795,142.30.

The contract provided that the company should start work within five days from the date of the signing of the contract and so to proceed that the work would be completed on the whole contract by September 1, 1954. The final completion date was determined by the architect to be February 1, 1955. On this date the balance due the company under the contract was $3,424.76. When the company submitted its final requisition for payment in July 1955, it included in addition to the balance, many items, including foundation wall finish, additional pumping, damage for delays, loss of profits, shifting of mill work program, interest, home office tie ups, telephone and telegraph, salaries,

travel expense and other accrued losses, totalling $180,-731.42. The authority admitted owing $3,424.76 and an additional $500.60 for which it was willing to execute change orders.

Thereafter, on or about August 31, 1955, the company requested that the dispute be submitted to arbitration and hearings by the selected board of arbitrators were held. The procedure followed at these hearings was governed by the Commercial Arbitration Rules of the American Arbitration Association. On November 17, 1957, the arbitration board made an award of $42,095 plus a portion of the costs and expenses of arbitration and witnesses. A signed copy of this award was delivered to each of the parties on December 10, 1957.

On April 11, 1958, the award was filed with the prothonotary and the company filed an application for confirmation of the award of the arbitration board. On July 3, 1958, the authority filed its petition to modify or vacate the award. A rule to show cause was granted thereon, and after argument, the Court of Common Pleas of Cameron County, on March 23, 1959, entered a decree, modifying the award and granting to the company the sum admitted by the authority to be due, of $3,925.36, with interest from February 1, 1955: Together with the sum of $851.94, being one half of the cost of transcribing the hearings which had been previously paid by the appellant. This appeal by the company followed.

Before discussion of the principle issues raised on appeal from the court's order, two questions should be preliminarily settled. The first being whether these proceedings were had under and subject to the arbitration Act of April 25, 1927, P. L. 381, 5 PS §161. The contract in this case sets forth on page J-16, in Article 41, under Arbitration, the following: "All disputes, claims or questions subject to arbitration under this

contract shall be submitted to arbitration in accordance with the provisions then obtaining of the standard form of arbitration procedure of the American Institute of Architects, and this agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other."

A reading of this paragraph makes it clear that the parties intended to proceed according to the Arbitration Law of Pennsylvania and that matters of hearing procedure alone would be determined by the American Institute of Architects Arbitration Procedure and both parties in their every action followed the Act as set forth above. *Seaboard Surety Co. v. Commonwealth,* 345 Pa. 147, 151, 27 A. 2d 27 (1942).

The second preliminary question is whether the authority is a municipal corporation, entitled to the same immunities, rights and powers of other municipal corporations. We agree with the opinion of the court below where President Judge TRAMBLEY said, "But regardless of whether the authority here is a municipal corporation we see no reason why the same rules of law which apply to municipal corporations should not apply to authorities. School authorities are created to perform some of the same functions which school districts are authorized to perform. In doing so they perform governmental functions, including the handling of money collected by taxation and, therefore, the same considerations of public policy should apply to an authority as to a school district. The public should, therefore, be given the same protection in the matter of liability under contracts entered into by an authority as is a school district and we so hold." However,

we find that it is a municipal corporation and that the Municipal Authorities Act of May 2, 1945, P. L. 382, as amended, 53 PS §301, recognized that this is so. One example of this legislative intent may be found in Sec. 15 of the Act, 53 PS §318, wherein it states, "The effectuation of the authorized purposes of Authorities created under this act shall and will be in all respects for the benefit of the people of the Commonwealth of Pennsylvania, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and since such Authorities will be performing essential governmental functions in effectuating such purposes, such Authorities shall not be required to pay any taxes or assessments. . . ."

It has been judicially determined in various situations that a municipal authority is also a municipal corporation. It follows that a school authority, under the Act in question, is clothed with the powers and rights, charged with the duties and entitled to the immunities of a municipal corporation in its dealings with others except insofar as such powers and duties may be restricted and limited by law. As was said by Judge HIRT in *West View Boro. Mun. Auth. Tax Case,* 175 Pa. Superior Ct. 641, 644, 107 A. 2d 130 (1954), "The Municipal Authority of the Borough of West View is not an agency of the Borough but is a separate municipal corporation 'performing essential governmental functions' in effectuating the purposes of its creation. . . . It is not the State but is merely an agency of the sovereign 'engaged in the administration of civil government'." See also: *Lighton v. Abington Township,* 336 Pa. 345, 9 A. 2d 609 (1939) ; *State College Borough Authority v. Pennsylvania Public Utility Commission,* 152 Pa. Superior Ct. 363, 31 A. 2d 557 (1943).

The appellant contends that the court below erred in not dismissing the authority's petition to modify or

vacate the arbitrators' award because more than three months had passed from the time of the alleged delivery of a copy of the award to the parties on December 10, 1957, and the filing of the petition on July 3, 1958.

The award itself was not filed with the prothonotary until April 11, 1958 at which time an application for confirmation of the award made by the arbitrators was filed as required by the Act of 1927, supra. Section 13 of the Act, 5 PS §173, provides: "Notice of a motion to vacate, modify, or correct an award shall be filed in the prothonotary's office of the court in which the application is made, and to be served upon the adverse party, or his attorney, within three months after the award is filed, or delivered, as prescribed by law for service of notice of a motion in an action."

A reading of this section in relation to the entire Act makes it readily apparent that it is capable of a number of reasonable interpretations as to what constitutes the time of filing or delivery of the award, at which time the three month period begins to run. The appellant interprets it to be December 10, 1957, when a copy of the award was served upon the parties. The appellee contends that the three month period begins to run on April 11, 1958 when the award was filed in the prothonotary's office. Under the language of this Act either interpretation is a reasonable one.

We feel that the word "filed" can certainly have no other meaning than filed in the prothonotary's office. In fact, prior to filing the award in the office of the prothonotary the Court is without jurisdiction to dispose of any matter concerning the case. Section 9 of the Act of 1927, 5 PS §169, says in regard to confirmation of the award, "at any time within one year after the award is made". Here, the time is clearly fixed. Section 8 of the Act of 1927, 5 PS §168, in using the word "delivered" clearly states "delivered to each party

to the arbitration". The language of Section 13, "within three months after the award is filed or delivered" is ambiguous.

In the present case all the usual tests of definition, punctuation, sequence of words, use of the statutory construction act and the application of the most reasonable interpretation are of no avail and we still end up with at least two reasonable interpretations of the meaning of the language of the Act. The section here involved is much in need of legislative revision and clarification. Where a party to litigation follows a procedure set forth by an act of the legislature, which adopted procedure is a reasonable interpretation of the meaning of the Act, this Court will not penalize such a litigant for his choice where several others, perhaps equally reasonable, might have been made.

The contention that the award is a finality from which there can be no appeal under the rules of the American Arbitration Association, is without merit. The proceedings were had under the Act of 1927, supra, and sec. 9, 5 PS §169, provides the basis for modification, correction and vacation of awards of arbitration. Grounds for modifying, correcting or vacating awards set forth in Sec. 10 and Sec. 11 of the Act, 5 PS §§170, 171 and Sec. 11(d) of the Act, 5 PS §171(d), provides: "Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict. The court may modify and correct the award or resubmit the matter to the arbitrators."

The appellant further contends that the court erred in finding that a school authority can evade liability upon an award of arbitration under a contract providing therefor, on the ground that the award is against public policy. This will be discussed in detail later but it should be here pointed out that the basis for the modification of the award by the court below was not

solely that the award was against public policy but that the authority being a municipal corporation was entitled to have applied the public policy set forth under the laws and the decisions as applied to municipal corporations.

The appellant also raised the question as to whether the Act of 1945, 53 PS §312, precludes the allowance of any award on a single item in excess of $500. The court below again indicated that this was not the basis for its findings, but merely noted that this Act provided that the construction, reconstruction, repairs, or work of any nature by any authority where the entire cost, value or amount of such construction, reconstruction, repairs, or work including labor and material shall exceed $500, with certain exceptions, shall be done only under contract or contracts to be entered into by the authority with the lowest responsible bidder upon proper terms, after due public notice has been given asking for competitive bids as provided in the Act.

It certainly was not the intention of the legislature that this section should apply to minor changes or additions which became necessary after work progressed under a large general contract as is herein involved, where such change or addition is an integral part of the work being done under the contract. However, should this work, construction or reconstruction, etc., be alien to the contract or something of an entirely new nature, or some matter not required in the construction, reconstruction, etc., the Act would apply. Neither did the Act apply to actions for damages for the negligence of the owners during the progress of work under such a contract.

A review of the record indicates that the appellant at no time charged the authority with being negligent in its conduct in carrying out the terms of the contract involved nor responsible in any way for any of the delays or other charges, so that we are here involved with

claims made by the company but not pointed at the party from whom it claims.

Finally the appellant contends that the award was not contrary to law and not such that had it been the verdict of a jury the court would have entered different or other judgment notwithstanding the verdict. We concur with the opinion of President Judge TRAMBLEY in which he ably discusses this question:

"Article 18, A and B, on page J-7 and Article 19 on page J-8 of the agreement are the provisions for changes in the work and provide, inter alia, that no extra work or change shall be made unless in pursuance of a written order from the owner signed or countersigned by the architect or a written order from the architect stating that the authority has authorized the extra work or change and no claim for an addition to the contract, shall be valid unless so ordered.

"Defendants not having strictly complied with the provisions of the contract in regard to changes in work and extras cannot recover for them as against a municipal corporation: Morgan vs. Johnstown, 306 Pa. 456, 463. The arbitrators were in error, therefore, in awarding defendant damages for such items.

"Defendant contends that strict compliance with the contract was waived because the architect gave change orders verbally and the written change order for such work was not issued sometimes until long after the work had been done; also because the architect verbally instructed the contractor to make certain changes and made threats of dire consequences to follow if the contractor did not make them. Defendant further contended that members of the authority knew that the changes were being made without the issuance of proper orders. Even if this be true it would not amount to a waiver of strict compliance with the terms of the contract, page J-7, Article 18 B, above cited.

"In Morgan vs. Johnstown, supra, at page 462, the Supreme Court said, 'It is admitted that there was no written order or authority from the City Engineer for any of the work claimed for. The contractor testified that he had been paid the amount awarded him by the certificates of the city engineer and that the work for which he brought suit was not covered by any certificates. Under the terms of the contract he could not recover for work done or material furnished without first showing the certificate of the city engineer. Whatever the rule may be as to the waiver of such requirements in contracts with individuals, as to municipal contracts we have held in a long line of cases, (citing cases) that the provisions of such contracts must be strictly pursued. As this contract provided that the only foundation for claims against the municipality for extra work was the written certificate of the engineer, no other kind of claim can be sanctioned. It is argued that the city impliedly waived the provisions of the contract by not insisting upon strict compliance with its terms, in that the members of the city council ordered changes in the execution of the work, not by written word, but verbally, which were made by the contractor and paid for by the city without the certificate of the engineer. We are of the opinion that this without formal action by city council could not affect the terms of the written contract. We refuse to conclude, in the case of municipal contracts, that the payment of certain items, for which no order in writing was given, when the contract provides that it shall be, results in a general waiver of the requirements of a written contract in this respect so as to form the basis for an additional claim.'

"In this same case, at page 463, the court said further, 'The court below in its opinion on the motion for a new trial and for judgment non obstante veredicto concluded that the city had waived strict compliance

with the provisions of the contract as to extra work. There is no evidence in the record of any action by city council waiving the terms of the contract. The court relied upon the Shiloh Street, McCormick's Appeal, 165 Pa. 336, but in that case there was a subsequent ratification by council of what was done. Here there is nothing of that kind. All that is claimed as a basis for a waiver is that the individual members of council knew what was being done and approved it and that the city acquiesced in this performance by accepting and paying for work for which the only authorization of certification was in oral form.'

"On page 464 of the same case the court said further, 'Here the claim made and recovery had is in the teeth of the explicit provision of the contract and no action was taken by the city council amounting to a waiver or abrogation of these provisions, or to a ratification of the work done. That individual councilman or other city authorities knew of the altered method of doing the work and approved it cannot be set up by the contractor to warrant his claim for extra work, where the written contract provides upon what his claim must be based. The agreement cannot be waived or altered in any such loose way. If it is to be changed, it must be by the same formal municipal action that created it. We said in Brobst v. City of Reading, 326 Pa. 627, 629: "His contract was with the city of Reading, and not with its engineers or Board of public works . . . What the city engineer and the board of public works permitted the appellant to do was not the city's permission. He had contracted, as just stated, not with them, but with it, and they were without authority to make a new contract with him to bind it. The powers of the engineer were to interpret the contract, not to change it . . . No deviations from the approved plans and specifications were to be allowed, unless by written consent of the city engineer, approved

by the board of public works. For, what was more than a mere deviation by the appellant from his contract with the city, he did not even have the written consent of the city engineer." '

"We think there is much similarity between the case of Morgan vs. Johnstown, supra, from which the above excerpts are quoted, and the present case. Therefore, the plaintiff cannot be held to have waived strict pursuance of the provisions of the contract, with which defendants must show strict compliance in order to substantiate the claim they have made.

"In regard to damages for delays the only concession provided for in the agreement is an extension of time for completion of a contract as set forth in Article 21, A, B, C and D on page J-8. Section D of this item states that Article 21, A, B and C, does not exclude recovery of damages for delay by either party under other provisions in the contract documents.

"The only other provision we find in the agreement is on page J-16, Article 41B, which states that if arbitration was demanded without reasonable cause the arbitrators may award the injured parties damages for delay.

"In this case the defendant contends that it was subjected to long delays by reason of the action of the architect, the job inspector, the other contractors, etc. In the case of Henry Shenk Co. vs. Erie Co., 319 Pa. 100, 103, 'There are certain impediments to the contractual power of municipal officers which everyone who deals with them is bound to know and be governed by. When such officers do acts for which they as individuals may be personally liable, such acts in determining whether liability is to be imposed on a municipality, are governed by different rules if done in furtherance of a governmental function by a government agent, or if the officer, in acting, is subservient to or controlled by a supervisory body such as a court.

·" 'In the interpretation of this contract, these principles must be kept in mind. It is not the policy of courts to countenance or encourage dishonesty or over reaching by public officials in their conduct more particularly where the municipality benefits from such acts, so at times it would seem that municipalities or school districts do profit through the mistakes of their officers. We do not here deal with dishonesty, over-reaching or unfair advantage; we have here delays of contractors and public officers claimed to be tantamount to negligence in failing to perform a public duty to the detriment of appellees.

" 'The contract contained a provision relative to delays by the acts or neglect of the owner, architect or other contractor or for any delays incident to the work. The rule relative to delays in the prosecution of work by an act or neglect of the owner, architect, or other contractors, or changes in the work and damages for wrongful acts or neglect has been thus stated. In construction work, an owner does not generally guarantee or indemnify against loss occasioned by the delays of independent contractors connected with the work which may be reasonably anticipated. The owner fulfills his duty when he selects as contractor a person generally known as responsible. Where contracts contain a provision against delay of other contractors or other incidents of the work, which provide in substance as this one does for no liability on the part of the owner for delays of contractors or changes in the work, such provision includes delays of other contractors in connection with the work, or delays which are covered by the contract or reasonably anticipated from the circumstances attending the project: Restatement of Contracts, sec. 315 (1) (b); See Goss vs. Northern City Hospital Association, 50 Washington 236; Thompson vs. St. Charles County, 227 Mo. 22. But such provisions have no reference to an affirmative or positive

interference on the part of the owner or his representative apart from the contract, or ordinarily to a failure to act in some essential matter necessary to the prosecution of the work unless delay in performance is contemplated by the contract; these interferences or failures may cause damages in other ways than that contemplated by the provisions against delays (citing cases). Such provisions do not include negligent acts of public officers in performing governmental functions, which will be discussed later.

" 'Where a party under a delay in time extension provision on entering a contract foresees or should foresee that the work might be delayed by the failure of the owner or another contractor to perform, the remedy therefor . . . (is an) extension of time on the part of those who perform the work, and the presumption arises that this was intended to measure the rights of the contractor thereunder: Goss v. Northern Pacific Hospital Association, 50 Washington 236; Cornell Co. vs. Schuylkill Co., 222 Fed. 876; See Richard vs. Clark, 88 N. Y. Supplement 242; Haydnville M. & M. Co. vs. Art Institute, 39 Fed. 484.'

"In this case the Supreme Court, at page 106, said further, 'The building contracts carried through the winter months. In this county, as in other northern counties, winter weather is quite severe, especially for some of the work herein involved. It would be rather dangerous construction to push the veneer or outside facing on the backing wall required by the plans and specifications during these months for reasons generally known. Shenk also knew prior to the execution of its contract that separate contracts must be let for the omitted portion of the completed structure. They knew that additional contracts must be approved by the court, and that later the court might disapprove them. Informal conversations were had with the judges to adjust the stone problem. Their contract contained no

provision in relation to these contracts nor the time when they would be let. Shenk's understanding as to letting later contracts was gathered from the general intent of the project with the plans and specifications therefor. Shenk claimed it was delayed twenty-four weeks on account of the letting of this contract. These incidents and others to be noted have an important bearing on the county's responsibility.

" 'Before discussing the delay in letting the two contracts, we will consider delays generally in the prosecution of the work in connection with these contracts and the relation of such delays to provisions just discussed. The general contract was let in October, 1928 and Shenk states that he was ready for the facing stone the following March. There was nothing in his contract that would require him to wait for the facing; it was entirely possible for the backing to have been put up with the facing to follow. But Shenk states that the architect issued instructions not to erect the backing until the facing stone was in place. He wanted both to go up together. There was no protest by Shenk as to these instructions, and no doubt they were proper. But this was an "act of architect." The contract for facing was let early in April and approved two weeks later. There was no shipment of stone until early in July. Shenk was thus delayed . . . in the progress of the work by (the) act of . . . another contractor.'

"Some of the damages claimed for delays are alleged to be due to having to keep men on the job when they had nothing to do because certain materials had not arrived; other damages for delay were claimed because one or more of the other contractors did not maintain his or their scheduled progress; still others because of changes ordered by the architect, etc.

"We do not believe that defendant is entitled to any damages for delay. Defendants claim that their work

was substantially completed on September 1, 1954, that that date and not February 1, 1955, should have been fixed as the date of completion of the work. September 1, 1954, was the date fixed in the agreement as the date for final completion. How can defendants claim that the work was completed on time and at the same time claim that they were delayed?

"Also defendants make no claim that any of the other contractors selected by plaintiff were not responsible: Henry Shenk Co. vs. Erie County et al., supra, page 104. Furthermore, the delays, if any, should have been anticipated by defendants, especially as Cameron County is a northern county, subject to severe winters, and they knew that the contracts would carry through the winter: Shenk Co. vs. Erie Co., supra, pages 104, 106.

"A party cannot recover damages which could have been avoided by the exercise of reasonable care. Avoidance of some of the consequences of delay, if any, could have been effected here by discharging any useless working force: Henry Shenk Co. vs. Erie Co., supra, page 110.

"If defendants were not satisfied with the manner in which the agreement was being carried out by the architect or the authority, they should have refused to go on with the work until they obtained the proper written authority required by the contract. Morgan vs. Johnstown, 306 Pa. 456, 465. The only excuse given by the contractor for continuing with the work was that the architect made threats of what would happen if they did not do as he said. It does not appear that the matter of these threats was ever called to the attention of the authority. If defendants had done so they would, no doubt have been relieved of their fear of these threats."

The court below properly modified the award of the arbitrators as being contrary to law.

Decree affirmed.