## Popkin Brothers, Appellant, *v.* Dunlap.

Argued October 13, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadt-feld, Parker, James and Rhodes, JJ.

*Edmund J. Bodziak,* with him *Reber, Granger & Montgomery,* for appellant.

*James Francis Ryan,* for appellee.

OPINION BY CUNNINGHAM, J., January 27, 1938:

This case began as an action upon a book account by Popkin Brothers, the plaintiff corporation, against E. Tilton Dunlap to recover $137 for potatoes sold and delivered to him; it was tried before a judge sitting without a jury and ended in a finding, and judgment thereon, in the sum of $163, with interest, in favor of the defendant upon his counter-claim; hence this appeal by the plaintiff.

Both parties were engaged in the business of buying and selling potatoes in wholesale quantities and defendant's specialty was supplying ship chandlers. The respective contentions of the parties as outlined in their pleadings may be thus summarized:

On June 17, 1930, defendant, under a verbal contract, purchased from plaintiff 137 bags of potatoes at $1 per bag, but did not pay for them. Plaintiff brought suit to recover this amount on August 4, 1930, and attached to its statement a copy of its books of original entry showing this transaction. Defendant in his affidavit of defense admitted delivery to him of these 137 bags and his failure to pay for them; he justified his refusal to pay by setting up a counter-claim against the plaintiff for damages in the sum of $300 alleged to have been suffered by him through the failure of plaintiff to deliver, by June 28, 1930, an additional 150 bags which defendant alleged plaintiff had orally agreed on June 17th to sell and deliver to him at the same price.

Defendant further averred that he had a contract with the Charles F. Stannard Company, ship chandlers, to supply the latter with 150 bags of potatoes at $2.50 per bag, and had contracted with plaintiff for the purchase of the additional 150 bags, referred to in the counter-

statement, in order that he might be able to fulfill his contract with that company; that by reason of plaintiff's refusal to deliver defendant was "forced to purchase 150 bags of potatoes" at $3 per bag from W. Richard Scarlett; and that defendant not only lost his anticipated profit of $1.50 per bag, but was also obliged to expend 50 cents per bag over and above the amount he received from the Stannard Company and thereby suffered a loss of $2 on each of the 150 bags, or damages in the total amount of $300. From this amount defendant deducted the $137 admittedly due plaintiff and claimed a balance of $163, with interest from June 18, 1930, or a total of $229.01.

In its answer to the counter-claim the plaintiff corporation denied it had contracted to sell and deliver to defendant the 150 bags therein referred to and averred it had merely told defendant it would give him an opportunity to bid at the opening of the market on June 18th for potatoes of the same grade as the 137 bags he had purchased from it the previous day—of which opportunity defendant failed to avail himself.

The pleadings and the evidence thereunder raised an issue of fact as to whether plaintiff had contracted to sell and deliver to defendant the additional 150 bags. This question was decided by the trial judge in favor of the defendant and against the plaintiff; as there was evidence to sustain that finding it is conclusive upon us and the questions involved upon this appeal are confined to the measure of damages adopted by the trial judge. We have not been given the benefit of an opinion by him in support of his finding, but the amount thereof indicates that he adopted in full the contention of the defendant as to the measure of his damages.

Upon a review of the testimony in the light most favorable to the defendant, who had the burden of supporting his counter-claim by competent evidence, we are not convinced that it justifies the finding of the court below.

It is clear that the potatoes referred to both in the

statement of claim and in the counter-claim were old potatoes of a low grade, known in the trade as "scabby" potatoes; they are described as potatoes having skin blemishes, or "scabs," which do not affect the inside of the potatoes but render them unmarketable in stores and undesirable for restaurant uses or any place where they are peeled by machines. The testimony for the defendant was that such potatoes could be used on tramp steamers where they are peeled by hand.

The first defect apparent in the proofs is that defendant failed to show the Stannard Company had agreed to pay him $2.50 per bag for "scabby" potatoes. No representative of that company was called and the only reference we find in the testimony to the matter is a statement by one of defendant's salesmen that "either scabs, or what we used to call dumb-bells, was the kind that we had in mind to fill that (the Stannard Company) contract." This testimony falls far short of proof that the Stannard Company had agreed to accept such potatoes and pay $2.50 per bag for them. The defendant himself merely testified that he had an order from the Stannard Company for "150 bags of potatoes."

Moreover, defendant's own testimony defeats his right to recover anything by way of anticipated profits upon the contemplated resale. He testified he had not advised the plaintiff corporation that he was buying the 150 bags from it in order to fulfill his contract with the Stannard Company. The counter-claim here is, in effect, an action by a buyer for failure of a seller to deliver goods. In such an action the purchaser of the goods cannot claim as an element of damages for non-delivery the loss of anticipated profits where it does not appear that the seller had knowledge at the date of his contract of an existing contract between the purchaser and the latter's customer. Mere knowledge that the purchaser was a dealer and that the goods were purchased to be resold to customers who were unknown to the seller is not sufficient to make the seller liable for loss of the purchaser's

anticipated profits: *David v. Whitmer & Sons,* 46 Pa. Superior Ct. 307; *Seward v. Penna. Salt Mfg. Co.,* 266 Pa. 457, 109 A. 617. See also *Raby, Inc. v. Ward-Meehan Co.,* 261 Pa. 468, 104 A. 750.

We think these material defects in the proofs require the reversal of the judgment. It does not follow, however, that the plaintiff corporation is entitled to a finding in its favor for the amount of its claim. As already indicated, there is competent evidence upon the record from which a judge, sitting without a jury, could find that plaintiff contracted orally with defendant to sell and deliver to him 150 bags of "scabby" potatoes, at $1 per bag, and failed to make delivery thereof. Defendant should therefore be afforded an opportunity to show, if he can, that he suffered such damages as are contemplated by and defined in Section 67 of the Act "Relating to the sale of goods," approved May 19, 1915, P. L. 543, 562, 69 PS §312. That section provides that where a seller wrongfully neglects or refuses to deliver the goods contracted for the buyer may maintain an action against the seller for damages for such non-delivery. The measure of damages is thus prescribed:

"Second. The measure of damages is the loss directly and naturally resulting, in the ordinary course of events, from the seller's breach of contract.

"Third. Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or if no time was fixed, then at the time of the refusal to deliver."

We have already considered the "special circumstances" which defendant pleaded but failed to prove. Another special circumstance urged in behalf of defendant is that there was testimony to the effect that plaintiff kept on promising delivery up to June 28th, upon

which date it became imperative for defendant to procure potatoes for the Stannard Company. As we view the matter, that testimony merely fixes the date of "refusal to deliver."

One of the reasons assigned by plaintiff for a new trial was that the defendant "failed to establish loss by the proper measure of damages, as prescribed by" the Act of 1915, supra. We have concluded that the interests of justice will be best served in this case by directing a new trial. In view of that conclusion, it is proper to call attention to the extent of the burden resting upon the defendant in his endeavor to support his counter-claim. The general rule is that a vendee who has been refused delivery is entitled to recover as damages only the difference, if any, between the contract price and the market or current price of the goods at the time they should have been delivered; and such vendee is entitled to that amount of damage whether he has purchased goods to take the place of those the vendor was to furnish or not: *Seward v. Penna. Salt Mfg. Co.*, supra; *Hauptman v. Penna. W. Home for Blind Men*, 258 Pa. 427, 102 A. 142; *Raby, Inc. v. Ward-Meehan Co.*, supra; *Iron Trade Products Co. v. Wilkoff Co.*, 272 Pa. 172, 116 A. 150; *Delmont Gas Coal Co. v. Diamond Alkali Co.*, 275 Pa. 535, 539, 119 A. 710; *Mindlin et al. v. O'Boyle et al.*, 278 Pa. 212, 122 A. 294; Williston on Contracts (Revised Edition, 1937) Volume 5, Sec. 1383, page 3869.

Upon the question of "an available market" for "scabby" potatoes between June 18th and 28th the testimony is not as clear as it should have been or as it evidently can be made. There was testimony to the effect that the potatoes involved under this contract were "old potatoes" which come into the market more or less irregularly after June 1st, or, in the language of one of defendant's witnesses, "only a few times a month." The question whether there was an available market for "scabby" potatoes and a market or current price for them

will be a question of fact to be decided by the trial judge in accordance with the weight of the evidence, as introduced by the respective parties.

The uncontradicted evidence now upon the record is that the potatoes which the defendant bought from Scarlett to fill the order of the Stannard Company were not the grade which plaintiff failed to deliver. Plaintiff's contract was to deliver "scabby" potatoes, at $1 per bag, but the potatoes which defendant bought from Scarlett, at $3 per bag, were high grade "No. one commercial potatoes." Proof that he paid $3 per bag for this single purchase from Scarlett does not establish the market value of potatoes of any grade: *Seward v. Penna. Salt Mfg. Co.,* supra. In this connection it may be remarked that the unsigned memorandum of the sale of potatoes from Scarlett to defendant was not the best evidence of the transaction and added nothing to the defendant's oral evidence. Another principle of law to be borne in mind in the retrial of this case is that a vendee who is suing for damages for failure to deliver goods of a certain grade may not purchase elsewhere goods of a substantially higher value or better quality than those contracted for and recover from the vendor as damages the difference between the contract price and the price of the higher grade goods, at least not without proof that the more expensive goods were alone available. *Monk v. Magee Carpet Co.,* 69 Pa. Superior Ct. 436, was a case in which a vendor failed to deliver certain rugs at a price contracted for. The statement of claim set forth the difference between the contract price and the amount paid by the vendee for certain rugs which he bought. The defense was that the vendee could have purchased in the open market rugs similar in quality to those which the vendor had failed to deliver. In the course of the opinion this court said: "It needs no discussion to show that if the plaintiff contracted with the defendant for rugs of a particular quality and description he could not purchase rugs of a better quality and higher value and

58

charge the defendant with the difference in cost; certainly not unless it was made to appear that the rugs which he did buy were substantially of the same quality and description and it was not practicable to buy in the market rugs of the quality and description alleged to have been contracted for." See also *Everett v. Delp,* 67 Pa. Superior Ct. 47.

Damages are not to be presumed, and defendant will have the burden of proving just what damage he suffered as a direct and natural consequence of plaintiff's alleged breach: *Seward v. Penna. Salt Mfg. Co.,* supra. "The object of the law is to compensate the party injured. He is entitled to this and nothing more, and in all cases compensation must be limited to the loss actually sustained": *Pittsburg Mfg. Co. v. Steel Co.,* 201 Pa. 150, 153, 50 A. 935.

The second assignment based upon the dismissal of plaintiff's motion for a new trial is sustained.

Judgment reversed and a new trial directed.