456 A.2d 1333

**KINGSLEY AND KEITH (CANADA) LIMITED and Kingsley and Keith Chemical Corporation**

v.

**MERCER INTERNATIONAL CORPORATION and Interstate Chemical Corporation and H.M. Trimble & Sons, Limited.**

**Appeal of H.M. TRIMBLE & SONS, LIMITED.**

Supreme Court of Pennsylvania.

Argued Sept. 23, 1982.

Decided Feb. 9, 1983.

Reargument Denied March 28, 1983.

P. Raymond Bartholomew, Cusick, Madden, Joyce & McKay, Sharon, for appellant.

Thomas T. Frampton, Voorhies, Keck, Rowley & Wallace, Greenville, for Kingsley and Keith, et al.

M.L. McBride, Jr., McBride & McNickle, Grove City, for Mercer Intern. Corp. and Interstate Chemical Corp.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## ORDER

PER CURIAM.

The Court being equally divided, the Order of the Superior Court is affirmed.

ROBERTS, C.J., files an opinion in support of affirmance in which LARSEN and FLAHERTY, JJ., join.

NIX, J., files an opinion in support of reversal in which McDERMOTT and HUTCHINSON, JJ., join.

O'BRIEN, former C.J., did not participate in the decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

ROBERTS, Chief Justice.

The record amply supports the order of the Court of Common Pleas of Mercer County sustaining its exercise of jurisdiction over appellant, H.M. Trimble & Sons, Limited. As the Opinion in Support of Reversal acknowledges, appellant "purposely availed itself of the privilege of conducting activities within the forum state" by partially performing the contract with appellees in Pennsylvania. Appellant entered into a contract to transport goods manufactured in Pennsylvania from Pennsylvania to Canada. In order to take custody of the goods in Pennsylvania, appellant entered into a "trip lease" of its equipment with Coastal Tanklines, Limited, which authorized appellant to enter Pennsylvania for that purpose. Compare *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and *Kenny v. Alexson Equipment Co.,* 495 Pa. 107, 432 A.2d 974 (1981) (jurisdiction inappropriate where defendant's contact with forum is fortuitous). The state's interest in assuring that a contract for the safe transportation of Pennsylvania goods is properly performed must be evident. Not only does Pennsylvania have an interest in highway safety; it also has an interest in assuring that Pennsylvania manufacturers do not bear unwarranted liability for goods proper when made and delivered to the buyer's carrier. See *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

Contrary to the assertion of the Opinion in Support of Reversal, it must be obvious that the reasonableness of asserting jurisdiction over a particular defendant is not

properly determined by the existence or non-existence of a mere allegation in the plaintiff's complaint of the situs of a claimed breach of contract. Indeed, in this case, appellee's claim against appellant for the improper carriage of goods does not even require proof that appellant's alleged contamination of the goods "occurred during [appellant's] sojourn in Pennsylvania," which, according to the Opinion in Support of Reversal, would be a necessary allegation for the exercise of jurisdiction. All appellee must prove is that the goods were contaminated when appellant made the delivery in Canada and that the goods had been in a satisfactory condition when appellant assumed custody in Pennsylvania. While the situs of an alleged breach, if known, is relevant to a jurisdictional inquiry, it is only one of many potential contacts between the defendant, the forum, and the litigation which may support jurisdiction.[1]

It is not unfair to require appellant, a Canadian-based carrier, to defend in a Pennsylvania court in an action for breach of contract instituted by the Canadian buyer against both the carrier and the Pennsylvania manufacturer who supplied the goods which the carrier contracted to transport from Pennsylvania to Canada. As the Supreme Court of the United States stated in *International Shoe,*

"to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of *or are connected with the activities within the state,* a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

1. The inappropriateness of the rigid, "three-pronged test" employed by the Opinion in Support of Reversal is evidenced by the results of the test as applied to this case. Rather than properly analyzing the reasonableness of jurisdiction in light of all relevant contacts between the defendant, the forum, and the litigation, see *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Opinion in Support of Reversal deems controlling only one potential contact, the "situs" of the alleged contractual breach.

*International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945) (emphasis supplied).[2] Accordingly, Pennsylvania's exercise of jurisdiction over appellant meets the requirements of due process, and the order of the Superior Court, 291 Pa.Super. 96, 435 A.2d 585, must be affirmed.

LARSEN and FLAHERTY, JJ., join in this opinion in support of affirmance.

## OPINION IN SUPPORT OF REVERSAL

NIX, Justice.

In the present appeal, we are confronted with the issue of whether the exercise of "long-arm" jurisdiction over a foreign corporation, whose only contact with the Commonwealth of Pennsylvania was the partial performance of a contract which was entered into in Canada by the foreign corporation and another Canadian corporation, violates the due process clause of the Fourteenth Amendment. A chronology of the pertinent facts is requisite.

Kingsley and Keith Ltd. (Kingsley Canada), a Canadian corporation, ordered approximately 80,000 pounds of methylene chloride from Kingsley and Keith Chemical Corporation (Kingsley New Jersey), a New Jersey corporation, pursuant to a supply contract with Celanese Ltd.,[1] another Canadian corporation to which ultimate delivery was to be made. On October 10, 1974, Kingsley New Jersey ordered two tank cars (approximately 40,000 pounds each) from Mercer International Corporation (Mercer Penna.),[2] a Pennsylvania corporation.

2. The emphasis supplied is also supplied by the Opinion in Support of Reversal in quoting *International Shoe;* yet, remarkably, that opinion fails to consider the very language which it has emphasized.

1. Celanese Ltd. is not a party to the instant litigation.

2. Mercer International Corporation and Interstate Chemical Corporation, another Pennsylvania corporation, are affiliated corporations doing business in Mercer, Pennsylvania.

The contract for delivery of the methylene chloride was entered into between the Montreal office of Kingsley Canada and H.M. Trimble & Sons, Ltd., a Canadian corporation (Trimble Canada).[3] Interstate Chemical Corporation (Interstate Penna.), a Pennsylvania corporation, was to provide the methylene chloride. On October 12, 1974, a tank truck of Interstate Penna. delivered approximately 40,000 pounds (½) of the methylene chloride for transfer to a tank truck of Trimble Canada in Indianapolis, Indiana, which in turn was to be delivered to Celanese in Canada.

On November 12, 1974, a second tank truck of Interstate Penna. transferred the remaining half of the methylene chloride (approximately 40,000 pounds) to a Trimble Canada tank truck in Mercer, Pennsylvania which load was also to be delivered to Celanese in Canada.

Upon arrival, testing and inspection in Canada, Celanese rejected the methylene chloride claiming that it was contaminated. Kingsley Canada and Kingsley New Jersey thereafter filed suit in the Court of Common Pleas of Mercer County against Mercer Penna., Interstate Penna. and Trimble Canada.

The causes of action against Mercer Penna. and Interstate Penna., as reflected in the amended complaint in assumpsit, assert breaches of implied warranties of merchantability and fitness for intended purpose concerning the methylene chloride. In addition, the amended complaint contains a separate count against Interstate Penna. for its transporting of the tank load of methylene chloride to Indianapolis, Indiana, where it was then transferred to a Trimble Canada tank car. The cause of action asserted against Trimble Canada claims a breach of contract to transport and deliver, alleging that

3. H.M. Trimble & Sons is one of several affiliated corporations within the Trimac Transportation System, a Canadian corporation. Although Trimac was originally listed as a defendant, it became known later that the contract for delivery was entered into and performed by Trimble. A stipulation was entered into naming Trimble as a defendant, rather than Trimac, and all pleadings and documents pertinent to the litigation referring to Trimac are to be construed to mean Trimble Canada.

Trimble Canada failed to take proper steps to avoid contamination of the methylene chloride.

Trimble Canada filed preliminary objections raising, *inter alia,* the question of jurisdiction of the Pennsylvania courts. Subsequently, Kingsley Canada and Kingsley New Jersey filed an amended complaint and after hearing, dated January 15, 1979, the Court of Common Pleas dismissed the preliminary objections and granted leave to the plaintiffs to serve the amended complaint at the home office of Trimble Canada by registered mail.[4]

On appeal, a panel of the Superior Court initially reversed the order of the Court of Common Pleas, holding that Trimble Canada's activities within Pennsylvania were insufficient to support jurisdiction.

Upon application of plaintiff-appellees for reargument, the Superior Court entered an order denying reargument but granting reconsideration. By opinion[5] and order filed on June 26, 1981, the three-judge panel reversed its position and affirmed the Court of Common Pleas, holding Trimble Canada amenable to the jurisdiction of the Pennsylvania courts.

In *Kenny v. Alexson Equipment Co.,* 495 Pa. 107, 432 A.2d 974 (1981) this Court recently set forth the parameters of the Fourteenth Amendment's due process limitation on a state's exercise of *in personam* jurisdiction over a non-resident defendant.

It is well settled that a state court may exercise personal jurisdiction over a non-resident defendant only so long as there exist "minimum contacts" between the defendant

---

4. The authority for this service may be found in Pa.R.C.P., R.2180(c), which provides:
   If service cannot be made under any of the methods set forth in subdivision (a) or (b) of this rule, the court upon petition shall authorize service by registered mail directed to the Secretary of the Commonwealth and to the corporation or similar entity at its last registered address or principal place of business, or by publication as the court may direct.

5. *Kingsley and Keith, Ltd. v. Trimble,* 291 Pa.Superior Ct. 96, 435 A.2d 585 (1981).

and the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The due process clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties or relations." *Id.* at 319, 66 S.Ct. at 159, 90 L.Ed. at 104. This requirement is based on the proposition that maintenance of suit against a non-resident defendant must not offend traditional notions of "fair play and substantial justice." *International Shoe, supra.* [Footnote omitted]

*Id.,* 495 Pa. at 117–18, 432 A.2d at 980.

The Superior Court, in the instant appeal, applied a three-pronged test to determine whether Trimble Canada possessed the requisite "minimum contacts" with Pennsylvania. This test,[6] first enunciated in *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir.1968) and adopted by the Superior Court in *Proctor & Schwartz v. Cleveland Lumber Co.,* 228 Pa.Superior Ct. 12, 323 A.2d 11 (1974) provides:

First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* [357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)]. Secondly, the cause of action must arise from defendant's activities within the forum state. *See Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th

6. A similar three-pronged test has been adopted by numerous jurisdictions. *See, e.g., Doyn Aircraft, Inc. v. Wylie,* 443 F.2d 579 (10th Cir.1971); *Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8th Cir. 1965); *Kourkene v. American B.B.R., Inc.,* 313 F.2d 769 (9th Cir. 1963); *L.D. Reeder Contractors of Arizona v. Higgins Ind.,* 265 F.2d 768 (9th Cir.1959); *White v. Goldthwaite,* 204 Kan. 83, 460 P.2d 578 (1969); *Tyee Construction Co. v. Dulien Steel Products, Inc. of Washington,* 62 Wash.2d 106, 381 P.2d 245 (1963). In addition, Southern Machine has been followed in: *In-Flight Devices Corp. v. Van Dusen Air., Inc.,* 466 F.2d 220 (6th Cir.1972); *King v. Hailey Chevrolet Co.,* 462 F.2d 63 (6th Cir.1972); *Hill v. Smith,* 337 F.Supp. 981 (W.D.Mich.1971). *See also* Note, Jurisdiction Over Nonresident Corporations Based on a Single Act: A New Sole for International Shoe, 47 Geo.L.J. 342 (1958).

Cir.1968); *Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F.Supp. 550 (D.Conn.1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington, supra; see Southern Mach. Co. v. Mohasco Indus., Inc., supra* [401 F.2d 374 (6th Cir.1968) ]; *see also In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir.1972); *Kourkene v. American BBR, Inc.,* 313 F.2d 769 (9th Cir.1963).

*Id.* 228 Pa.Super. at 19, 323 A.2d at 15.

A number of commentators have submitted that the three-pronged test represents appropriate guidelines, based on the reasoning of *International Shoe* and its progeny, against which due process should be analyzed. *See, e.g.,* Comment, *Pennsylvania's New Long-Arm Statute,* 79 Dick. L.Rev. 51, 77 n. 136 (1974); Note, *Jurisdiction Over Nonresident Corporations Based on a Single Act: A New Sole for International Shoe,* 47 Geo.L.J. 342 (1958).

In *Kenny v. Alexson Equipment Co., supra,* this Court held that the non-resident defendant had not purposefully availed himself of the privilege of conducting activities within Pennsylvania and thus could not be rendered amenable to *in personam* jurisdiction consistent with due process. It was therefore unnecessary for us to decide what, if any, additional guidelines should be addressed. In the instant appeal, Trimble Canada implicitly concedes that, through its entering into Pennsylvania to partially perform the delivery contract, it purposely availed itself of the privilege of conducting activities within the forum state. We are therefore required to determine what other factors are necessary to insure that due process is satisfied before personal jurisdiction may be asserted. After careful review, we are convinced that this three-pronged test represents workable guidelines in establishing whether there exist "minimum contacts" among the defendant, the forum and the litigation.

The second prong requires that "the cause of action must arise from defendant's activities within the forum state." This requirement is derived from *International Shoe, supra,* wherein the United States Supreme Court noted:

... [T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations *arise out of or are connected with the activities within the state,* a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. [Emphasis added.]

326 U.S. at 319, 66 S.Ct. at 160.

One commentator has suggested that the activities of the non-resident defendant are related to the cause of action when there exists "substantive relevance" between the facts constituting the forum contact and the facts required to prove the substantive cause of action. 1980 *Supreme Court Review* at 82.

The test can be illustrated by the facts of *Peters v. Robin Airlines,* 281 A.D. 903 (2d Dept.1953). A New York statute purported to grant jurisdiction over operators of aircraft in collision litigation if the craft had landed at or departed from a New York airfield. In a brief opinion, the *Peters* court refused to apply the statute because the New York stopover did not contribute to the crash. The stopover was of no substantive relevance to the dispute, since the complaint did not allege that the collision was due to negligent operation or maintenance there. For this reason, it should be categorized as an unrelated contact. [Footnotes omitted.]

*Id.* at 84.

The purpose of the second prong, as it relates to substantive relevance, is to insure that the acts of the nonresident defendant within the forum state represent the factual predicates upon which a cause of action are to be based. Without this requirement, the nexus between the defend-

ant's activities, the cause of action and the forum state have not been established. Such a causal connection is critical to the assertion of long-arm jurisdiction.

In the Superior Court opinion in the instant case, Judge Spaeth, writing for the panel, explained the second prong of the minimum contacts test as follows:

> As we read it, the second part of the ... test may be satisfied by pleading a contract having a significant connection with Pennsylvania ... and a breach of that contract. We recognize that it may be argued that this is too broad a reading. [Citation omitted.]

291 Pa.Superior Ct. at 108, 435 A.2d at 591.

This interpretation of the second prong of the test must be rejected for several reasons. First, the language, requiring only that the contract have a significant connection with the forum and a breach of that contract, is vague and fails to delineate definitive guidelines in order to determine when a significant connection exists.

Equally as important, where, as here, the situs of the breach is critical, such an interpretation ignores the non-resident defendant's activities in the forum state in this regard. Finally, implicit in the Superior Court's interpretation of the second prong in the instant case, is the creation of an unacceptable distinction between actions in assumpsit and those in trespass for purposes of asserting constitutionally permissible long-arm jurisdiction.[7]

7. The Superior Court in its opinion emphasized in its cited cases distinctions between actions in assumpsit and actions in trespass. We believe that the analysis of whether minimum contacts exist is to be determined solely on the basis of those facts tending to establish the required relationships between the nonresident defendant's activities, the cause of action and the forum. Although the facts as averred in a contract action may be different than those averred in a tort action, it cannot be said that an alternative standard of minimum contacts is required in one as opposed to the other. *See, e.g.,* D. Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois,* 1963 U.Ill.L.F. 533. "To vary the minimum contacts needed for jurisdiction according to the character of the suit would lead plaintiff into disingenuous manipulation of their pleadings, and it would plunge the courts into ever more difficult refine-

As applied to the facts of the instant case, it is evident the second prong of the jurisdictional test has not been met. It must be remembered that there are two separate and distinct contracts involved in this litigation. The foreign plaintiffs are suing the Pennsylvania defendants on an alleged breach of contract and warranties due to the methylene chloride's contamination upon delivery. The second contract, the focus of the instant jurisdictional controversy, was negotiated and entered into by and between Kingsley Canada and Trimble Canada. This contract contemplated two shipments of methylene chloride. The first shipment to be picked up by Trimble Canada in Indianapolis, Indiana, the second shipment to be picked up by Trimble Canada in Pennsylvania. The mere fact that the contract caused one of the shipments to be picked up in Pennsylvania, absent an allegation that the breach occurred during the sojourn in Pennsylvania, fails to meet the requisite contact under this prong of the test. Nor can this deficiency be ignored simply because appellees are unable to determine where the breach occurred.

Standing alone, the mere contemplation under the terms of the contract of partial performance in the forum state does not provide that state with a significant interest in the litigation. Similarly, the instant case is not one wherein the state has a manifest interest in providing effective means of redress for its residents. *McGee v. International Life Ins., supra.* Thus having concluded that the second prong of the test has not been met, we need not inquire into the third prong.

However, even when the three pronged test cannot be satisfied, jurisdiction, nevertheless, may be found where the nonresident's activities in the forum state are "so continuous and substantial as to make it reasonable" to require the non-resident defendant to submit to the jurisdiction of the Pennsylvania courts. *Bork v. Mills,* 458 Pa. 228, 232, 329 A.2d 247, 249 (1974); *see also, Kenny v. Alexson Equipment*

ments of the categories." *Vencedor Mfg. Co., Inc. v. Gougler Industries,* 557 F.2d 886, 894 (1st Cir.1977).

*Co., supra.* The record discloses that except for the single entry into Pennsylvania, Trimble Canada has had absolutely no contacts, ties or relations within this Commonwealth. In the absence of facts showing Trimble Canada's activities in Pennsylvania to be continuous and substantial, jurisdiction over appellant, Trimble Canada may not be asserted consistent with due process.

Accordingly, the Order of the Superior Court should be reversed and the complaint against appellant Trimble Canada dismissed.

McDERMOTT and HUTCHINSON, JJ., join in this opinion.