507 A.2d 1241

**SCHNABEL ASSOCIATES, INC., General Partner, t/a Williamsport Building Associates,**

v.

**T & M INTERIORS, INC. and Atlantic Carpet Corporation**

v.

**DALTON CARPET FINISHING CO., INC.**

**Appeal of ATLANTIC CARPET CORPORATION.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1985.

Filed April 17, 1986.

Joseph R. Musto, Williamsport, for appellant (at 90) and for appellee (at 91).

Clifford A. Rieders, Williamsport, for appellant (at 91) and for appellee (at 90).

W. Hensell Harris, Atlanta, for Schnabel, appellee.

Before WIEAND, OLSZEWSKI and WATKINS, JJ.

OLSZEWSKI, Judge:

On July 25, 1984, the Court of Common Pleas of Lycoming County filed an order entering judgment in a contract action in favor of appellee Schnabel Associates, Inc. (Schna-

bel), and awarded damages. Judgment was entered against T & M Interiors, Inc. (T & M), Atlantic Carpet Corporation (Atlantic) and Dalton Carpet Finishing Co., Inc. (Dalton). Cross-claims of Atlantic and Dalton against T & M were denied. Atlantic, however, was found liable to T & M for providing defectively manufactured carpet, and, in turn, Dalton was found liable to Atlantic for improperly applying lamination to the carpet in question. Atlantic (in No. 90 Harrisburg 1985) and Dalton (in No. 91 Harrisburg 1985) filed separate appeals to this order. Since the issues raised in Atlantic's appeal are identical to issues II and III of Dalton's appeal, we have consolidated the appeals. Three issues raised by Dalton and discussed below resolve both appeals.

■ The first issue raised by both Atlantic and Dalton is that the expert testimony given by Schnabel's expert with respect to delamination strength of the carpet at issue in this action was improper testimony based upon lack of knowledge about the carpet sample and sample size. We disagree. Admission of expert testimony is a matter for the discretion of the trial court, and that court's exercise of discretion will not be disturbed unless there is a clear abuse. *Laubach v. Haigh*, 433 Pa. 487, 252 A.2d 682 (1969); *Kubit v. Russ*, 287 Pa.Super. 28, 429 A.2d 703 (1981). Appellants claim that Schnabel's expert, Mr. Alan Lightkep, was not absolutely certain that the carpet sample he tested was new, and did not know exactly from where it came. Appellants also complain that Mr. Lightkep did not test three sample pieces of the carpet. Mr. Lightkep testified that he believed the carpet sample he tested was new; that he knew the sample came from the Timberland Apartments; and that it would make no difference in the testing whether the carpet sample was new or had been installed. Further, the test of one carpet sample was valid, and testing other samples would only serve to reinforce the validity of the test. Mr. Lightkep's testimony that the carpet was defectively manufactured by nature of the absence of sufficient latex was corroborated by the testimony of other experts.

Therefore, we find that the admission of Mr. Lightkep's testimony was not a clear abuse of the trial court's discretion, and we find no reversible error.

■ Next, another common question raised by Atlantic and Dalton is whether Schnabel failed to mitigate damages properly and whether the trial court incorrectly calculated damages based upon the evidence. We find that this issue also lacks merit. Appellants claim that appellee failed to mitigate damages when it replaced the carpet in the entire building instead of replacing the carpet in only the damaged areas. The lower court ably countered this argument in finding that although the carpet failure was obvious in only 40 percent of the total apartment complex when it was replaced, "the same carpeting material (with defective lamination) was used throughout the project; the failure of the carpeting was pervasive; and while the failure of the carpeting was slower to materialize on the floor areas where the underflooring was used, it was apparent that the carpeting did not meet minimum contract standards." *See* lower court findings, pp. 15–16. We find that appellee's conduct, viewing all the facts. and circumstances presented at the time the carpet was replaced, was reasonable and proper. *See Toyota Industrial Trucks, U.S.A., Inc. v. Citizens National Bank,* 611 F.2d 465 (3d Cir.1979).

■ Appellants further claim that the damages award was improper. They claim the lower court erred in failing to consider the salvage value of the replaced carpet, and in allowing appellee to replace the defective carpet with an higher quality carpet. First, we refer to the lower court findings, page 16, where the lower court expressly states: "Plaintiff entered into a contract with Sears to remove the old carpet and replace it with 24 ounce carpeting at a cost of $9.40 per square yard. The $9.40 price included a credit to Sears for *salvage* of the carpet which was removed." No further comment is necessary. With regard to the appellants' complaint that the appellee wrongfully used upgraded carpet to replace the old carpet, appellants cite *Popkin Brothers v. Dunlap,* 130 Pa.Super. 50, 196 A. 586 (1938),

for the proposition that: "A vendee who is suing for damages for failure to deliver goods of a certain grade may not purchase elsewhere goods of a substantially higher value or better quality than those contracted for and recover from the vendor as damages the difference between the contract price and the price of the higher grade goods, at least not without proof that the more expensive goods were alone available." *Id.* While we agree with this statement of law, we do not see how it was violated by the trial court. The trial court did not award as damages the difference between the contract price and the price of the higher grade goods. Instead, the trial court determined the difference between the cost of the higher quality carpet and the cost of the same quality replacement carpet, and subtracted this difference from the actual cost of the replacement. Thus, the damages were adjusted downward to put the appellee in only as good a position as if performance had been properly rendered by appellants. *See Denby v. North Side Carpet Cleaning Company,* 257 Pa.Super. 73, 390 A.2d 252, 256 (1978). Since the trial court acted in accordance with established law, we find its damages award was proper.

█ The final issue in this action pertains solely to appellant-Dalton. Dalton argues that the Pennsylvania courts lack in personam jurisdiction over it, as Dalton is a Georgia corporation. Pennsylvania's courts can exercise in personam jurisdication over a non-resident defendant if jurisdiction is conferred by the state long-arm statute; and the exercise of jurisdiction under the statute must meet the constitutional standards of due process. Since the Pennsylvania long-arm statute extends to the fullest extent permitted by the Constitution of the United States, in personam jurisdiction is proper when the non-resident has sufficient "minimum contacts" with the state. *Hewitt v. Eichelman's Subaru, Inc.,* 341 Pa.Super. 589, 492 A.2d 23 (1985); *see* 42 Pa.Cons. Stat.Ann.Sec. 5322 (Purdon 1981). Due process standards are satisfied if these "minimum contacts" are sufficient so that maintenance of the suit does not offend the traditional notions of fair play and substantial justice. *International*

*Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The "minimum contacts" standard, as pertinent to the case at bar, was recently defined by the United States Supreme Court in *World-Wide Volkswagen Corp. v. Woodson,* when the Court stated that "minimum contacts" sufficient to confer in personam jurisdiction exist "... if the sale of a product of a (non-resident) manufacturer or distributer ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other states...." In such a case it would not be unreasonable to subject this non-resident to suit in the state in which the non-resident's goods were marketed if an injury were caused by defective merchandise. 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The facts of the case at bar show that there are sufficient "minimum contacts" with Pennsylvania under the Supreme Court standard to subject Dalton to in personam jurisdiction. Evidence at trial established that Dalton did the finishing work on carpet shipped by Atlantic for a period of twenty years. Atlantic shipped the finished carpet to the 48 contiguous states, including between 100 and 1,000 shipments to Pennsylvania. Dalton obviously intended to serve an interstate market indirectly through Atlantic. Dalton was aware of its work being shipped to Pennsylvania as it was forced on occasion to deal with complaints on its finishing jobs from Pennsylvania. Therefore, Dalton regularly engaged in shipping carpet into Pennsylvania through Atlantic, and this action provided the requisite "minimum contacts" to confer in personam jurisdiction on the Pennsylvania courts.[1]

Finally, it would be useful to apply the guidelines established by this court to determine if "minimum contacts" exist. In *Proctor & Swartz, Inc. v. Cleveland Lumber Company,* 228 Pa.Super. 12, 323 A.2d 11 (1974), we held that it must be determined: (1) whether the non-resident

---

1. *See Skinner v. Flymo, Inc.,* 351 Pa.Super. 234, 505 A.2d 616 (Pa.Super.Ct. 1986).

defendant has purposely availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws; (2) whether the cause of action arises from defendant's activities within the forum state; and, (3) whether the acts of the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. Since Dalton finished carpet for Atlantic, knowing that it would be shipped to other states, including Pennsylvania on between 100 and 1,000 occasions, it clearly availed itself of the privilege of acting within Pennsylvaniaa. This point is reinforced by the fact that Dalton actually travelled to Pennsylvania to inspect the damaged carpet in this case. Further, there is no question that the cause of action arose in Pennsylvania by virtue of Dalton's indirect shipment of a defectively manufactured latex compound (which rendered the carpet defective) into Pennsylvania. Finally, there was a sufficient connection with Pennsylvania under the "minimum contacts" standard to make the exercise of jurisdiction by the Pennsylvania courts reasonable. Therefore, we find this third issue to be without merit. Since we find no merit in the three issues raised on this consolidated appeal, we affirm the decision of the lower court.

Order affirmed.

WIEAND, J., files a concurring opinion.

WIEAND, Judge, concurring:

I join the opinion of the majority as it affirms the trial court's award of damages and its allowance of testimony by appellee's expert. I also agree with the majority that Dalton Carpet Finishing Co., Inc. had sufficient contacts with Pennsylvania to render it subject to the jurisdiction of the Pennsylvania courts. For reasons stated in the opinion filed in *Skinner v. Flymo, Inc.*, 351 Pa.Super. 234, 505 A.2d 616 (1986), however, I am of the opinion that the standards set forth in *Proctor & Swartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974), are too rigid and no longer provide a valid test for determining the "mini-

mum contacts" necessary to a court's exercise of in personam jurisdiction over a nonresident defendant.[1]

1. The three-pronged test of *Proctor & Swartz* was criticized in *Kingsley & Keith (Canada) Ltd. v. Mercer International Corp.,* 500 Pa. 371, 374 n. 1, 456 A.2d 1333, 1335 n. 1 (1983) (opinion of Roberts, C.J., in support of affirmance). See also: *United Farm Bureau Mutual Insurance Co. v. United States Fidelity and Guaranty Co.,* 501 Pa. 646, 462 A.2d 1300 (1983).